LIVELY, Chief Judge.
 

 The principal question in this case is whether Ohio’s strip mining permit fee requirement for posting a performance bond is an excise tax entitled to priority treatment under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (1982). The matter is here on appeal from the district court, which affirmed the finding and conclusion of the bankruptcy court that the permit fee is an excise tax.
 

 I.
 

 Jenny Lynn Mining Co. (Jenny Lynn) was licensed by the Ohio Department of Natural Resources (ODNR) to carry on strip mining operations. On February 18, 1981 Jenny Lynn filed a voluntary petition in bankruptcy in the Southern District of Ohio. The petition sought “straight” bankruptcy, that is, liquidation under Chapter 7. Following the election of Gerald H. Spiers as trustee, ODNR filed several proofs of claim. We are concerned only with proof of claim # 15, filed August 5, 1981, in which ODNR sought priority status for a claim of $42,060. On the proof of claim form ODNR described the ground of liability as:
 

 Non-payment of cash and non depositing of surety bond or certificates of deposit required.
 

 The trustee filed an objection to proof of claim # 15 on the ground that “[n]o documentation was attached to the proof of claim substantiating the claim.” The basis of the objection was former Bankruptcy Rule 302(c),
 
 [1]
 
 which provided:
 

 When a claim, or an interest in property of the debtor securing the claim, is founded on a writing, the original or a duplicate shall be filed with the proof of claim unless the writing has been lost or destroyed. If lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim. If a security interest is claimed, the proof of claim shall be accompanied by satisfactory evidence that the security interest has been perfected.
 

 The bankruptcy court conducted a hearing on the trustee’s objection and concluded that Rule 302(c) did not apply since ODNR’s claim was based on an obligation created by a statute and was not founded on a writing. The bankruptcy judge wrote:
 

 Where a Proof of Claim is based upon the failure to perform a state statutory act, it will not generally be found necessary to attach documentation of the enactment.
 

 The parties agreed that the claim was entitled to priority if the permit fee was in fact an excise tax. The permit fee requirement was contained in Ohio Revised Code (O.R.C.) § 1513.07(A) (1978), which provided
 
 [2]
 
 in part:
 

 No licensed operator shall conduct a strip mining operation without a permit for such operation issued by the chief of the division of reclamation. The chief shall issue an order granting a permit upon the approval by him of an application, as required by this section, payment of a permit fee in an amount equal to the product of thirty dollars multiplied by the number of acres, estimated in the application, which will comprise the area of land affected within the permit period by the strip mining operation for which the permit is requested, and the deposit of a surety bond, cash, or certificates of deposit as prescribed by division (A) of section 1513.08 of the Revised Code for the number of acres that the operator states in his application that will be affected during the first year of operation under the permit.
 

 Examining the entire reclamation law the bankruptcy judge noted that the bond or
 
 *587
 
 money required to be deposited in order to obtain a permit was used both for actual reclamation of land that a strip mine operator failed to reclaim, and for expenses of operating the division of reclamation. He wrote, “[T]he privilege of operating a strip-mine in Ohio carried with it a statutorily imposed charge, or expense of doing business, to support both reclamation and operation of the agency established by the state to implement reclamation.”
 

 Defining an excise tax as “a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege,” the bankruptcy court concluded that the permit fee is an excise tax. The court found the measure of the tax to be tied to “the meeting of responsibilities which exist concomitantly with the enjoyment of the privilege of operating a strip-mine.”
 

 On appeal to the district court the trustee argued that ODNR’s claim did not involve an excise tax. According to the trustee, it was either a claim for a penalty or for a license fee, or a claim arising from the debtor’s failure to perform its duties. However, the district court agreed with the bankruptcy court on both issues. The district court determined that the claim was clearly based on a statutory obligation, not on a writing between Jenny Lynn and ODNR. The district court also held that the findings on which the bankruptcy court based its characterization of the permit fee as an excise tax were not clearly erroneous, and upheld the determination that the claim was one for a tax, and therefore entitled to priority.
 

 II.
 

 A.
 

 We agree with the courts below that Rule 302(c) did not apply to ODNR’s claim. With respect to unsecured claims, the purpose of Rule 302(c) was to apprise the bankruptcy court and the trustee of the terms of any writing which formed the basis of a claim. The statutory requirement that strip mine operators post performance bonds to obtain permits is clear and unconditional. There was no documentation that would have provided additional notice to the trustee of the basis for the claim. Attaching a copy of the statute would have added nothing to the proof of claim. Proof of claim # 15 was not based on a “writing.”
 

 B.
 

 Government claims for excise taxes are entitled to priority under 11 U.S.C. § 507(a)(6)(E) (1978).
 
 [3]
 

 (a) The following expenses and claims have priority in the following order:
 

 ******
 

 (6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—
 

 ******
 

 (E) an excise tax on—
 

 (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
 

 (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;
 

 The bond or deposit required by O.R.C. § 1513.07(A) was “for the payment of an amount of money equal to the estimated cost to the state to perform reclamation ... in case of default by the operator.” O.R.C. § 1513.08(A) (1)75). In addition to requiring an operator to pay a fee and deposit a surety bond, cash or certificate of deposit when applying for a strip mining permit, the reclamation statute required additional bonds to cover “increments” as the mining extended to portions of the permit area not covered by the first year of operation. O.R.C. § 1513.08(A) (1981).
 

 The trustee contends that ODNR’s claim is not founded on an excise tax, but is
 
 *588
 
 merely a general claim for an unsecured debt. This court recently dealt with a somewhat similar question in
 
 United States v. River Coal Co., Inc.,
 
 748 F.2d 1103 (6th Cir.1984). The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 et seq. (1982), requires strip mine operators to remit for deposit in the Abandoned Mine Reclamation Fund a reclamation fee of 35 cents per ton of coal mined. 30 U.S.C. § 1232(a). A preliminary question in
 
 River Coal
 
 was whether these “fees” are in fact “taxes” and nondis-chargeable in bankruptcy. The district court held that the fees are taxes and the debtor in Chapter 11 proceedings argued on appeal that they are true fees. This court concluded that the reclamation fees are taxes and recited several characteristics which distinguish governmentally imposed fees from taxes. We quoted from the opinion of the Supreme Court in
 
 National Cable Television Assn., Inc. v. United States,
 
 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974):
 

 A fee ... is incident to a voluntary act,
 
 e.g.,
 
 a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.
 

 This court determined that “the chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer.” 748 F.2d at 1106. The federal statute under consideration in
 
 River Coal
 
 requires a permit fee as well as reclamation fees, and this court noted the difference between the two charges:
 

 The permit is issued at the request of an operator and bestows an individual benefit — the privilege of operating a surface mine — on the applicant. It is similar to a license to practice a profession or to conduct a broadcast station. The abandoned mine reclamation fee is quite different. It is imposed as an additional charge on operators who have already received permits. Unlike the permit fee, the reclamation fee does not confer a benefit on the operator different from that enjoyed by the general public when environmental conditions are improved. On the contrary, it is an involuntary exaction for a public purpose — to create a fund to be used for “reclamation and restoration of land and water resources adversely affected by past coal mining.” 30 U.S.C. § 1231(c)(1). The reclamation fee has the essential characteristics of a tax, and we conclude it is a “tax” for the purposes of § 17 of the Act.
 

 Id.
 

 The permit requirements of the applicable Ohio reclamation law in the present case paralleled those of the federal law considered in
 
 River Coal.
 
 The requirements of performance bonds were almost identical: Both required the amount of the bond to depend on the reclamation requirements of the approved permit, and both required additional bonds for further “increments.” Compare O.R.C. § 1513.08(A) (1981) with 30 U.S.C. § 1259 (1982). In neither case do the permit fees have the characteristics of the reclamation fees, which were a separate requirement. The distinction made between the two exactions in
 
 River Coal
 
 applies here.
 

 We conclude that the claim filed by ODNR, for a bond or cash required to be deposited in order to obtain a permit, was not based on an excise tax. The deposit was required because the operator had requested a permit, and the permit bestowed a discrete benefit on the applicant — the privilege of operating a surface mine. Without the deposit the reclamation division would not have issued a permit. This charge is unlike the “reclamation fee” considered in
 
 River Coal.
 
 Payment of that fee conferred no benefit on a mine operator. The
 
 River Coal
 
 operator had already paid the permit fee and received a permit and was then required to make an additional payment of 35 cents per ton of coal mined, for which no additional privilege or benefit was granted.
 

 
 *589
 
 Although the bankruptcy court’s factual finding that a part of the permit fee was used for operation of ODNR was correct, we think that fact is irrelevant. The apparent significance of this finding to the bankruptcy court was that it showed that the general public benefited from the payment of permit fees. One of the characteristics of a tax as opposed to a fee is that a tax is an exaction for public purposes rather than a voluntary payment for a private benefit. However, one purpose of most governmen-tally imposed fees is to support the agency that administers the program under which the fee is charged, presumably serving some public purpose. If this were the deciding factor, all such fees would be “taxes” for bankruptcy purposes. Where a governmental unit imposes a charge in return for bestowing an individual benefit on one who requests permission to engage in a regulated activity, the charge is a fee rather than a tax.
 

 We have examined the authorities relied upon by ODNR to support the decisions of the bankruptcy court and the district court, but find them unpersuasive. ODNR cites
 
 New York v. Feiring,
 
 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941), where “taxes” are defined for bankruptcy purposes as “those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.” That definition is helpful as far as it goes. However, the issue in
 
 Feiring
 
 was whether a sales tax was a “tax” for bankruptcy purposes where the bankrupt was a vendor. The argument was that a vendor merely collects sales taxes with the obligation to pay falling on his customers. Thus, the bankrupt vendor should be treated as one indebted to the governmental unit only for failure to remit taxes collected from others, so that his obligation was simply a debt for the amount of taxes collected. The Supreme Court rejected this argument and held that the sales tax was an exaction laid upon the bankrupt vendor, who had the option of passing it along to his customers.
 
 Feiring
 
 did not require the Court to make that distinction between governmentally imposed fees and taxes. The Supreme Court did make that distinction in
 
 National Cable Television,
 
 a decision relied upon in
 
 River Coal
 
 and in this opinion.
 

 The judgment of the district court is affirmed in part and reversed in part. The cause is remanded with directions to enter judgment finding that proof of claim # 15 established a valid unsecured claim, entitled to no priority.
 

 [1]
 

 . Proceedings in this case were subject to the Bankruptcy Rules which were superseded August 1, 1983. New Rule 3001(c) retains the “writing" requirement.
 

 [2]
 

 . Section 1513.07 was redrafted in 1981, but the permit fee requirement was retained.
 

 [3]
 

 . Now renumbered as 11 U.S.C. § 507(a)(7)(E) (Supp. II 1982).