**In re S.N.A. NUT COMPANY, Debtor.**

**Bankruptcy No. 94 B 5993.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 2, 1995.

Ronald R. Peterson and Catherine Steege, Jenner & Block, Chicago, IL, for debtor.

Turner Oyloe, Sacramento, CA, for California Walnut Commission.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Objection of S.N.A. Nut Company ("Debtor") to the Priority Tax Status of Claim # 128, filed by the California Walnut Commission ("Commission"), under § 507(a)(8) of the Bankruptcy Code ("Code"). The Commission was established by the California Legislature in 1987,[1] to maintain and expand the walnut industry in California,[2] and to provide information to the public regarding the beneficial qualities of walnuts, and the production and distribution costs necessary to make them available.[3] To achieve these goals, the Commission is empowered to promote and advertise the sale of walnuts,[4] to make walnut market surveys and analyses,[5] to conduct marketing research on walnuts,[6] and to publish, without charge, information for dissemination to walnut producers and handlers [7].

The revenue source for these programs comes from an assessment exacted on walnut producers "to defray operating costs of the

1. Cal.Agric.Code § 77001 *et seq.* (West 1986 & Supp.1995).

2. Cal.Agric.Code § 77002.

3. Cal.Agric.Code § 77003.

4. Cal.Agric.Code § 77090.

5. Cal.Agric.Code § 77092.

6. Cal.Agric.Code § 77095.

7. Cal.Agric.Code § 77097.

commission."[8]  Although the assessment is levied on the producer, if the producer sells walnuts to a handler[9] then the handler is to deduct the assessment amount from the funds paid and hold it in trust for payment to the Commission.[10]  The Commission deposits the funds in a bank account separate from the state's general tax fund.[11]

On March 2, 1994, an involuntary bankruptcy petition was filed against the Debtor in the Western District of Texas, under Chapter 11 of the Code.  On March 24, 1994, the Debtor consented to the entry of an order for relief, and venue was transferred to the Northern District of Illinois.  As a handler under § 77028 of the California Food and Agricultural Code, the Debtor was obligated to remit assessment monies from walnut purchases to the Commission.  As a result of its failure to do so, the Commission filed a priority tax claim in the amount of $29,250 against the Debtor.

The Debtor argues that the Commission's assessment claim does not qualify for priority status under § 507(a)(8) of the Code, since assessment proceeds are used to benefit private walnut producers, rather than the general public, by encouraging and marketing walnut consumption in the state.  The Commission responds that since the assessment scheme was enacted for the "express purpose of defraying the expenses reasonably and necessarily incurred in furthering [the state's agricultural industry]," it was indeed established for a public purpose.  Moreover, since the assessment also constitutes an involuntary burden, imposed by the California Legislature, under the police power of the state, it satisfies the legal definition of a "tax" under § 507(a)(8), and should be afforded priority status.

The Court finds that the California Walnut Commission acts basically as a trade association.  Its actions promote the walnut industry rather than the public at large.  Consequently, assessments levied by the Commission should be considered "fees" rather than "taxes," for purposes of determining priority status of claims under § 507(a)(8) of the Code.

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334, and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## I.  LEGAL DEFINITION OF "TAX" UNDER § 507(a)(8) OF THE CODE

█  Under § 507(a)(8) of the Code, unsecured tax claims of governmental units are given priority over general unsecured claims against the Debtor.[12]  To qualify for priority treatment, not only must the assessment meet the requirements of a subsection under § 507(a)(8), but it must also be a "tax" within the meaning of the Code.  The latter determination must be made with reference to federal law, and state characterizations of the assessment are not binding.  *In re Suburban Motor Freight, Inc. (Suburban II)*, 36 F.3d 484, 487 (6th Cir.1994); *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029–30, 85 L.Ed. 1333 (1941).

█  In order for a particular assessment to be considered a "tax" under the priority section of the Bankruptcy Act (§ 64(a)), a four-pronged analysis was utilized by courts.  An assessment was characterized as a "tax" if it involved:

---

8.  Cal.Agric.Code § 77098.

9.  The California Food and Agricultural Code defines a handler as "any person engaged in the marketing of walnuts which he or she has produced or purchased or acquired from a producer, or is marketing on behalf of a producer whether as owner, agent, employee, broker, or otherwise."  Cal.Agric.Code § 77028.

10.  Cal.Agric.Code § 77151(c).

11.  Cal.Agric.Code § 77068.

12.  Section 507(a)(8) states, in pertinent part, "(a) [t]he following expenses and claims have priority in the following order: ... (8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for— ... (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity ... (E) an excise tax on— ..."  11 U.S.C. § 507(a)(8)(C) & (E).

394

1. an involuntary pecuniary burden; regardless of name, laid upon individuals or property;

2. imposed by, or under authority of the legislature;

3. for public purposes, including the purpose of defraying expenses of government or undertakings authorized by it;

4. under the police or taxing power of the state.

*In re Lorber Industries of California, Inc.,* 675 F.2d 1062, 1066 (9th Cir.1982). *See also Dungan v. Dept. of Agriculture, State of California,* 332 F.2d 793 (9th Cir.1964) *aff'g In re Farmers Frozen Food Co.,* 221 F.Supp. 385 (N.D.Cal.1963).

In determining whether assessments constitute "taxes" under the Code, the *Lorber Industries* analysis has enjoyed continued vitality. *In re George,* 95 B.R. 718, 720 (9th Cir. BAP 1989) *aff'd* 905 F.2d 1540 (9th Cir.1990); *In re Cassidy,* 983 F.2d 161, 163 (10th Cir.1992); *U.S. v. City of Huntington,* 999 F.2d 71, 73 (4th Cir.1993); *In re Chateaugay Corp.,* 177 B.R. 176, 183 (S.D.N.Y. 1995); *In re Airlift International, Inc.,* 97 B.R. 664, 669 (Bankr.S.D.Fla.1989). *Cf. In re Suburban Motor Freight, Inc. (Suburban II),* 36 F.3d 484, 488 (6th Cir.1994). Given that the second and fourth prongs of the *Lorber Industries* test are satisfied in most assessment schemes, courts have determined "taxes" to be involuntary exactions for a public purpose, and "non-taxes" ("fees") to be voluntary payments for a private benefit. *In re Jenny Lynn Mining Co.,* 780 F.2d 585, 588–89 (6th Cir.1986).

## II. PUBLIC PURPOSE REQUIREMENT

■ In determining whether an assessment qualifies as a "fee" or a "tax," the Supreme Court in *National Cable Television Assoc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), noted that whether or not a private benefit is bestowed on the payer is an important factor.

A fee ... is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing these services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

*Id.* at 340–41, 94 S.Ct. at 1149.

Courts since then have uniformly held assessments to be "fees" when the resulting funds are used for the primary benefit of the payer. *In re Becker,* 169 B.R. 725 (Bankr. D.Kan.1994) (assessments for the cost of weed cutting and removal are not "taxes" under the Code); *In re Adams,* 40 B.R. 545 (E.D.Pa.1984) (water and sewer rent fees are not "taxes" under the Code); *In re South Atlantic Packers Assoc., Inc.,* 28 B.R. 80 (Bankr.D.S.C.1983) (poultry inspection fees are not taxes under the Code); *In re Lorber Industries of California, Inc.,* 675 F.2d 1062 (9th Cir.1982) (sewer user fees were not "taxes" under tax priority section of the Act). Furthermore, the Sixth Circuit has refined its interpretation of the public purpose prong and added a "universality requirement," so as to ensure "that the financial exaction's burden and benefit inure to the general public welfare, and that it not provide a discrete benefit to, or result from privileges claimed by, the Payer." *In re Suburban Motor Freight, Inc. (Suburban II),* 36 F.3d at 489.

In particular, when courts have determined levies to constitute a "permit fee," *i.e.,* an assessment entitling a party to engage in a particular industry, they have concluded that the assessment bestows a private benefit and qualifies as a "fee." In *In re Jenny Lynn Mining Co.,* 780 F.2d 585 (6th Cir. 1986), the Ohio Department of Natural Resource filed a priority claim for the nonpayment of cash and deposit of a surety bond or certificate of deposit required for a strip mining permit. Without such a permit, entities were not legally entitled to conduct strip mining operations.[13] Consequently, the court concluded that since "the permit bestowed a discrete benefit on the applicant— the privilege of operating a surface mine[,]" the assessment bestowed a private, rather

---

13. Ohio Rev.Code Ann. § 1513.07(A) (Anderson    1978).

than public, benefit on the payer, and was a "fee." *Id.* at 588.[14]

The Court finds the assessment scheme at bar to be factually similar to those in the "permit fee" cases. Section 77151 of the California Food and Agricultural Code requires handlers to remit an assessment amount to the Commission based on walnuts shipped by producers to handlers. However, § 77173(c) states that "upon entry of any final judgement on behalf of the commission against any defendant [for non-payment of the assessment], the court shall enjoin the defendant from conducting any type of business regarding walnuts until there is full compliance and satisfaction of the judgement."[15] The statute is clear, for walnut handlers to enjoy the private privilege of engaging in the walnut industry, payment of the assessment is required.

The degree to which this assessment can be considered private is exacerbated by the activities for which the assessment is used. The assessment funds are utilized to create a common pool fund for the advertisement, marketing, and promotion of walnuts—activities which bestow a discrete, private benefit to the walnut industry.

Since the assessment scheme affords handlers the opportunity to engage in the walnut industry, and confers walnut marketing, promotion, and advertising benefits in return, this Court finds that the assessment promotes the walnut industry, rather than the public at large.

The Commission argues that the decision in *In re Farmers Frozen Food Co.,* 221 F.Supp. 385 (N.D.Cal.1963), is factually similar to the matter at bar, and should be followed to find that its assessment is a "tax." In *Farmers Frozen Food,* decided under the Bankruptcy Act ("Act"), the court confronted the issue of whether an assessment levied pursuant to a marketing order under the California Marketing Act of 1937 was a "tax" so as to be afforded priority status. As with assessment funds collected by the Commission, monies collected under the marketing order were to be used for promotional and research activities benefiting another California commodity industry.

In *Farmers Frozen Food,* the court determined that the marketing order assessment constituted a "tax" after applying the legal "tax" definition utilized by courts under the Act. In arriving at this conclusion, the court determined that the assessment involved an "involuntary pecuniary burden," because the marketing order involved statutory, rather than contractual, obligations. *Id.* at 387. Also, the assessment was found to be for a public purpose, since the funds were utilized "to defray the necessary expenses incurred by the director in the formulation, issuance, administration and enforcement of each marketing order." *Id.* at 388.

However, contrary to the *Farmers Frozen Food* decision, courts under the Code have not hesitated to determine certain assessments to be "fees," despite the fact that they stemmed from statutory obligations. *In re Jenny Lynn Mining,* 780 F.2d 585, 588 (6th Cir.1986) (holding that "permit fee" assessments required by statute are not "taxes" under the Code); *In re Shooters Emporium, Inc.,* 135 B.R. 701, 702–03 (Bankr.S.D.Fla. 1992) (holding that background check assessments required by statute are not "taxes" under the Code). Moreover, interpretation of the public purpose "tax" requirement to mean only that assessment funds be utilized to defray government expenses has been criticized under the Code. In *In re Jenny Lynn Mining,* 780 F.2d 585, the Sixth Circuit determined that a "permit fee" assessment did not involve a "public benefit," despite the fact that a portion of the funds were used to fund a regulating government agency. *Id.* at 589.

---

**14.** In *In re Longo,* 144 B.R. 305 (Bankr.D.Md. 1992), the court noted in dicta that an application fee for operation of a private career school, which was required by statute, should be considered a "fee," since it "bestow[ed] the private benefit of operating a career school in Maryland, and that benefit is not shared by the rest of society." *Id.* at 313. The Court in *In re Shooters Emporium, Inc.,* 135 B.R. 701 (Bankr.S.D.Fla.

1992), determined that a background check assessment required by statute constituted a "fee" rather than a "tax." The court noted, "the purpose of the payment is for private benefit. Only people who pay the fee may purchase a firearm." *Id.* at 702–03.

**15.** Cal.Agric.Code § 77173(c) (emphasis added).

The court stated that "one purpose of most governmentally imposed fees is to support the agency that administers the program under which the fee is charged, presumably serving some public purpose. If this were the deciding factor, all such fees would be 'taxes' for bankruptcy purposes." [16]

Consequently, this Court declines to follow *Farmers Frozen Food*, as its application of the legal "tax" requirements to the marketing order assessment has not been followed by courts under the Code. Thus, given that the Commission's assessment scheme advances the private interests of the walnut industry, rather than the general public, the Commission's assessment shall be considered a "fee" rather than a "tax," and without priority status under § 507(a)(8) of the Code.

## III. CONCLUSION

The Court, therefore, finds that claim # 128 of the California Walnut Commission shall not be allowed as a priority claim under § 507(a)(8) of the Code, and shall be reclassified as a general unsecured claim without priority.

**16.** *See also In re Suburban Motor Freight, Inc. (Suburban I)*, 998 F.2d 338, 341 (6th Cir.1993) (noting that "all money collected by the government goes toward defraying its expenses, and is used for public purposes. The threat [of this interpretation of the public purpose requirement], then, is that the government automatically wins priority for all money any debtor owes to it, regardless of the nature of the payments").