**In re GATES COMMUNITY CHAPEL OF ROCHESTER, INC., Debtor.**

**Bankruptcy No. 90–21729.**

United States Bankruptcy Court, W.D. New York.

Aug. 25, 1997.

David D. MacKnight, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for Debtor.

Trudy A. Nowak, Assistant U.S. Trustee, Office of U.S. Trustee, Rochester, NY.

### DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On August 18, 1990, Gates Community Chapel of Rochester, Inc. (the "Debtor"), a church incorporated under Article 8 of the Religious Corporation Law of the State of New York, filed a voluntary petition initiating a Chapter 11 case. On April 19, 1993, the Court entered an Order (the "Confirmation Order") confirming the Debtor's Fifth Amended Plan (the "Plan"). Among its provisions, the Plan: (1) provided for the cre-

ation of a fund (the "Fund") of $2,650,000.00 by the payment to a "Liquidating Agent" of a sum of not less than $22,083.33 per month; (2) provided that the Liquidating Agent would manage the liquidation of four parcels of real estate owned by the Debtor, as well as the contents of a dwelling on one of the parcels, and make semi-annual pro rata distributions from the Fund to the unsecured creditors who held total claims of $19,841,-377.53; (3) authorized the Liquidating Agent to retain professionals; and (4) required the Liquidating Agent to file a report with the Office of the United States Trustee (the "U.S. Trustee") along with each semi-annual distribution and file a final account upon the completion of all distributions under the Plan.

The Confirmation Order required the Debtor to file a report of substantial consummation and a final report within ninety (90) days after the date of the entry of the Confirmation Order and pay all "quarterly U.S. Trustee fees" pursuant to 28 U.S.C. Section 1930(a)(6) ("Section 1930") within ten (10) days of the entry of the Order.[1] On August 28, 1993, after the ninety-day period had run, the attorney for the Debtor was advised by the Bankruptcy Court Clerk's office that unless a report of substantial consummation and a final report were filed by October 28, 1993, an order to show cause would issue. On October 28, 1993, the Debtor filed its Report of Substantial Consummation and a Final Account (the "Final Report") on the standard form utilized in the Western District of New York. The Final Report included a Statement that the Plan had been substantially consummated and a request that the Court enter a final decree closing the case.

Because at the time the Debtor filed its Final Report and request for an order closing the case, there were unresolved issues between the Debtor and the Liquidating Agent with respect to the initial distribution due under the Plan, and shortly thereafter

---

1. On August 18, 1992, the Bankruptcy Court for the Western District of New York issued a Notice to Attorneys indicating that the Judges of the District had approved the use of a standardized Chapter 11 confirmation order which included a provision that debtors file a report of substantial consummation and a final report within ninety (90) days unless that time frame was inappropriate and the debtor had requested and obtained approval for a different time frame at its confirmation hearing.

motions were made by a secured creditor for relief from the stay [2] and by the Debtor to replace the Liquidating Agent, the case was not closed. Thereafter, on May 19, 1994, the Court received a letter from the attorney for the Liquidating Agent requesting that the case not be closed and that it remain open because of: (1) the still unresolved legal issues between the Debtor and the Liquidating Agent concerning the semi-annual distributions due under the Plan; and (2) the expectation that the Liquidating Agent would continue to incur expenses for legal services, the payment of which would need to be approved by the Court. Finding that there was sufficient cause to conclude that the estate had not been fully administered, the Court allowed the case to remain open.

On June 20, 1995, the Liquidating Agent filed his First Interim Report which included his reports covering the first and second distributions to unsecured creditors, and on November 7, 1996, the Court entered an Order approving the payment of professional fees incurred by the Liquidating Agent for the period March 25, 1993 through August 16, 1996.

On January 3, 1997, the Debtor made a motion (the "Closing Motion") for an Order closing its Chapter 11 case. On January 10, 1997, the U.S. Trustee filed an objection (the "U.S. Trustee Objection") to the Closing Motion which also requested that the Debtor be required to pay all quarterly U.S. Trustee fees due and owing as of the date of the Objection and through the date any order closing the case was entered.

At the hearing on the return date of the Closing Motion, the attorneys for the Debtor and the U.S. Trustee presented oral argument as to whether, given the provisions of the Plan and the status of all post-confirmation activity, the estate had been fully administered, and the Debtor: (1) objected to any proposed order that would require it to pay post-confirmation quarterly U.S. Trustee fees asserting that: (a) any post-confirmation fees required to be paid should be paid by the Liquidating Agent out of the Fund; (b) such

fees were nothing more than a tax, which the Debtor was not required to pay since it was a church and was exempt from paying Federal Income Taxes; (c) requiring it to pay such fees would be a violation of the "Establishment Clause" of the First Amendment; and (d) requiring it to pay such fees would violate the Religious Freedom Restoration Act; and (2) asserted that any quarterly U.S. Trustee fees due should be calculated solely on the disbursements being made by the Liquidating Agent under the Plan, and not on the gross disbursements of the "Reorganized Debtor". Written submissions were subsequently made by the parties, including a May 20, 1997 Response on behalf of the U.S. Trustee (the "U.S.T. Response").

## DISCUSSION

### I. THE CLOSING MOTION

Bankruptcy Code Section 350 provides that:

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

Rule 3022 of the Federal Rules of Bankruptcy Procedure provides that:

After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

Although the Bankruptcy Code does not define the term "fully administered", the Advisory Committee Note to the 1991 Amendments to Rule 3022 (the "Advisory Committee Note") sets forth the following non-exclusive list of factors that a bankruptcy court should consider in determining whether an estate has been fully administered: (1) whether the order confirming the plan has become final; (2) whether deposits required by the plan have been distributed;

---

**2.** Even though there is no automatic stay in effect after the confirmation of a Chapter 11

plan.

(3) whether the property proposed by the plan to be transferred has been transferred; (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

■ In addition, several courts have concluded that a Chapter 11 case should be considered "fully administered" when it reaches the point of substantial consummation as defined in Section 1101(2).[3] See *In re Walnut Associates v. Saidel,* 164 B.R. 487 (E.D.Pa.1994); *In re BankEast Corp.,* 132 B.R. 665 (Bankr.D.N.H.1991).

Section 1101(2) provides that "substantial consummation" means: (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of business or of the management of all or substantially all of the property dealt with the plan; and (C) commencement of distribution under the plan.[4]

Other decisions have made it clear that a bankruptcy court should not maintain its jurisdiction only because of a mere possibility that such jurisdiction may be invoked by the parties in the future, and that the entry of a final decree in no way completely deprives the court of its jurisdiction to reopen the case, enforce or interpret an Order or determine a pertinent issue. See *In re John G. Berg Associates, Inc.,* 138 B.R. 782 (Bankr. E.D.Pa.1992); *In re Jordan Mfg. Co., Inc.,* 138 B.R. 30 (Bankr.C.D.Ill.1992).

■ It appears that all of the applicable factors enumerated in the Advisory Commit-

tee Note have now been completed, in that: (1) the Order confirming the Plan became final on April 16, 1993; (2) the property of the Debtor has been transferred or is being liquidated by the Liquidating Agent; (3) the Reorganized Debtor has assumed the business and management of the property dealt with by the Plan; (4) payments under the Plan have commenced; and (5) all anticipated motions, contested matters and adversary proceedings have been resolved. In addition, the Plan has been substantially consummated within the meaning of Section 1101(2). Therefore, notwithstanding that the Liquidating Agent may be filing further reports and an accounting with the U.S. Trustee, this case is fully administered within the meaning of Section 350(a) and Rule 3022 and will be closed. See *In re Jay Bee Enterprises, Inc.,* 207 B.R. 536 (Bankr.E.D.Ky.1997); *In re Indian Creek Limited Partnership,* 205 B.R. 609 (Bankr.D.Ariz.1997); *In re Wade,* 991 F.2d 402 (7th Cir.1993).

## II. *POST-CONFIRMATION QUARTERLY U.S. TRUSTEE FEES*

Prior to January 26, 1996, Section 1930 required the payment of quarterly U.S. Trustee fees until the case was converted or dismissed or a Chapter 11 plan was confirmed.

On January 26, 1996, pursuant to Public Laws 104–91 and 104–99, Section 1930 was amended to provide, "In addition to the filing fees paid to the clerk, a quarterly fee shall be paid to the United States Trustee in each case under Chapter 11 of Title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first."

On September 30, 1996, in response to court decisions refusing to require payments in cases where plans had been confirmed

---

**3.** This Court will not automatically find cases to be fully administered just because they have reached the point of substantial consummation.

**4.** Prior to January 26, 1996 when Section 1930 was amended to require the payment of quarterly U.S. Trustee fees post-confirmation, in order that cases could be closed as quickly as possible, this Court encouraged plan proponents to limit the court's post-confirmation involvement in the case by: (1) limiting otherwise broad jurisdictional

provisions in plans and confirmation orders; and (2) completing adversary proceedings and contested matters, including claim objections, prior to confirmation. With the financial incentive provided by the 1996 amendments to Section 1930, the Court has found that plan proponents and interested parties have become much more aggressive in completing items of administration pre-confirmation.

prior to the January 26, 1996 Amendment, Congress enacted Public Law 104–208, 110 Stat. 3009, which further amended Section 1930 to provide that the quarterly fees "shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans ..." Section 1930, as finally amended, further provides, as it always has, for a graduated fee to be paid by the party commencing a Chapter 11 case based upon "disbursements".

The U.S. Trustee has acknowledged that it believes that quarterly fees are now due as a result of the 1996 amendments until a case is closed, converted, or dismissed, whichever occurs first. (U.S.T.Response, p. 7).

■ There is no legislative history to Section 1930, as originally enacted or amended, which defines the term "disbursement." However, the legislative history to the January 26, 1996 Amendment, while not offering any guidance about the precise meaning of "disbursement", does offer guidance as to the purpose of the Amendment, which was to increase quarterly fee revenues to help fund the System by extending the payment period beyond confirmation. The Initial House Report from the Committee on Appropriations regarding the decline in bankruptcy filings states:

"The recommendation assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of undoing to correspond to this decline, which was not reflected in the budget request. The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in process will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period). Presently, quarterly fees are collected only until the plan of organization in the case is confirmed by the court."

H.R.Rep. No. 104–196, at 16–17 (1995).

■ I agree with those courts which have held that this legislative history indicates that Congress intended to simply extend the same payment obligations imposed during the pre-confirmation period into the post-confirmation period. *In re P.J. Keating Company,* 205 B.R. 663, 665 (Bankr.D.Mass. 1997).

Certainly there is nothing in the language of Section 1930 or the 1996 amendments, the Legislative History to the 1996 amendments or the Department of Justice United States Trustee System Fund Estimates for Fiscal Year 1996 (the "U.S.T. Estimates")[5] which indicate that the "disbursements" upon which a party commencing the Chapter 11 case should pay a fee would be different post-confirmation than pre-confirmation. In fact, the U.S.T. Estimates contemplate more U.S. Trustee post-confirmation involvement as a result of the 1996 amendments and revenues consistent with a simple continuation of fees computed on the same basis post-confirmation and pre-confirmation. This is especially true where, as here, the operations of the entity have been basically the same pre-petition, post-petition and post-confirmation. In this case, Gates Community Chapel of Rochester, Inc. was the pre-petition debtor and the debtor-in-possession, and continues as the Reorganized Debtor. Its disbursements upon which quarterly U.S. Trustee fees were computed and paid pre-confirmation remain essentially the same post-confirmation.

## III. THE DEBTORS OBLIGATION TO PAY QUARTERLY U.S. TRUSTEE FEES POST–CONFIRMATION

### A. Religious Freedom Restoration Act

The Debtor has argued that requiring it to pay post-confirmation quarterly U.S. Trustee

---

5. On June 26, 1997, the Court had requested copies from the U.S. Trustee of any budget projections and related assumptions presented to or prepared for Congress in connection with the 1996 amendments, or prepared for internal use by the U.S. Trustee System.

fees violates the Religious Freedom Restoration Act, 42 U.S.C. Section 2000bb et seq. (the "R.F.R.A."). This argument has been rendered moot as a result of the recent Decision of the United States Supreme Court which found the R.F.R.A. to be unconstitutional as its enactment exceeded the scope of Congress' power under the Fourteenth Amendment. *See City of Boerne v. P.F. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

### B. *The Establishment Clause*

The Debtor has argued that it should be exempt from paying quarterly U.S. Trustee fees because: (1) they are a form of tax, since they are "an enforced contribution to provide for the support of government", and the Debtor is exempt from paying certain taxes; and (2) their imposition upon the Debtor would be in violation of the Establishment Clause. The Debtor: (1) relies on *Walz v. Tax Commission of the City of New York,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), ("*Walz*"), which held that tax exemptions for religious organizations do not violate the Establishment Clause of the First Amendment; (2) argues that because religious organizations are granted an exemption from federal income taxes under Internal Revenue Code § 501(a) and (c)(3), and are exempt from local real property taxes in New York, *see American Bible Society v. Lewisohn,* 40 N.Y.2d 78, 386 N.Y.S.2d 49, 351 N.E.2d 697 (1976), they should be exempt from having to pay any form of tax; (3) argues that any tax imposed upon a religious organization denies it an economic benefit and an eased tax burden, and, therefore, violates the Establishment Clause; and (4) argues that because the granting of tax exemptions to religious organizations is *not* unconstitutional, the failure to grant a tax exemption to a religious organization *is* unconstitutional.

 This Debtor's argument that the quarterly U.S. Trustee fees constitute a form of tax is wholly without merit. First, although the United States Supreme Court (the "Supreme Court") has never firmly established a standard for determining when a particular assessment is a tax, it has "consis-

tently adhered to the general rule that what must be considered is the real nature of the tax and its effect upon the federal right asserted." *United States v. City of Huntington, W.Va.,* 999 F.2d 71, 73 (4th Cir.1993) (quoting *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944)). The "label applied to an assessment ... does not determine whether the assessment is a tax or non-tax." *National R.R. Passenger Corp. v. City of New York,* 882 F.2d 710, 715 (2nd Cir.1989).

 The Supreme Court has expressly made a distinction between "taxes" and "fees": "Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act ... and connotes a 'benefit' [not shared by other members of society]". *National Cable Television v. United States,* 415 U.S. 336, 340–341, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974); *see also In re Jenny Lynn Mining Co.,* 780 F.2d 585, 589 (6th Cir.1986) (holding one of the characteristics of a tax as opposed to a fee is that a tax is an exaction for public purposes rather than a voluntary payment for a private benefit) *In re S.N.A. Nut Company,* 188 B.R. 392 (Bankr.N.D.Ill.1995). A fee has also been characterized as a "charge [imposed] in return for bestowing an individual benefit on one who requests permission to engage in a regulated activity." *In re Jenny Lynn Mining Co.,* 780 F.2d at 589; *see also In re SNA Nut Company,* 188 B.R. at 394.

 Considering all relevant facts and circumstances, I believe that quarterly U.S. Trustee fees are a form of user-fee, not a tax. The quarterly fees are exacted against parties filing Chapter 11 cases in exchange for a privilege voluntarily requested or petitioned for and from which a special benefit is derived. In this case, the Debtor made a voluntary choice to subject itself to the jurisdiction of the Bankruptcy Court and the Bankruptcy System in order to receive the benefits of: (1) receiving a discharge from a substantial amount of its debt; and (2) pro-

viding a structure for the partial repayment of its debts under the supervision of the Bankruptcy System, which in part has allowed it to continue to raise contributions. The fees in question are: (1) imposed only on parties filing Chapter 11 cases, not the general public; (2) are based upon the amount of disbursements made by an entity during any given quarter, so that they are not imposed based on an ability to pay or an amount of property owned; and (3) are not imposed arbitrarily. The simple fact that the fees raise revenue for the U.S. Trustee Fund is not dispositive, as nearly every type of fee or assessment raises revenue. Furthermore, this Court does not believe that it has the power to fashion a "tax exemption" for this or any Debtor. That is for the Legislative Branch.

Even assuming that the quarterly U.S. Trustee fees do constitute a form of tax, their imposition on the Debtor does not violate the Establishment Clause. The long-standing Establishment Clause test, as announced by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) ("*Lemon*"), requires that a statute, in order to withstand a traditional Establishment Clause challenge, must: (1) have a secular purpose; (2) have a primary effect which neither advances nor inhibits religion; and (3) not foster an excessive government entanglement with religion.[6] The Establishment Clause, as such, forbids "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz*, 397 U.S. at 668, 90 S.Ct. at 1411.

The Debtor claims that the imposition of quarterly U.S. Trustee fees fails the *Lemon* test because it violates the third prong of the Establishment Clause. Before specifically addressing that argument, I believe it is noteworthy to analyze the first two prongs of the *Lemon* test as presented by this case.

As to the secular purpose requirement, the imposition of quarterly U.S. Trustee fees is clearly secular and legislative in nature. The quarterly fee system is merely an attempt to provide some of the funding for the U.S. Trustee System. Congress: (1) believed the program "provides a great service to our country's bankruptcy system", H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, reprinted in 1986 U.S.Code Cong. & Admin. News 5234, 5235; (2) believed that "in the time of budget deficit concerns, self-funding becomes a necessity," *id.*; and (3) sought to ensure that the Trustee Program would be paid for "by the users of the bankruptcy system—not the taxpayer." *id.* at 5234. Congress clearly did not single out any specific religious group or church in enacting Section 1930 when it imposed the quarterly U.S. Trustee fees upon all Chapter 11 filers. There is no evidence that the actual purpose of Section 1930 was to impair religious practices, nor is there any evidence of an ulterior motive for the adoption of the law.

As to the second prong of the *Lemon* test, the primary effect of Section 1930 neither advances nor inhibits religion. The statute, while facially neutral, is also neutral and nondiscriminatory in effect. The fees apply to *all* entities, religious or otherwise, who file Chapter 11 cases. There are no explicit or deliberate distinctions made between different religions, let alone any religions.

With respect to the final prong of *Lemon*, and the Debtor's primary argument, the payment of the required quarterly U.S. Trustee fees does not, pre-confirmation or post-confirmation, result in an excessive entanglement between the Debtor and the government. The excessive entanglement prong has been defined as a "comprehensive, discriminatory, and continuing state of surveillance." *Lemon*, 403 U.S. at 619, 91 S.Ct. at 2114. The factors used to make such a determination of whether excessive entanglement exists include "the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority." *Lemon*, 403 U.S. at 615, 91 S.Ct. at 2112. In making such an assessment, it is important to note that "[i]nteraction between church

---

6. The framework of *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), contrary to the U.S. Trustee's contentions, is not

applicable here as the present case is not one in which a claimed denominational preference exists.

and state is inevitable." *Id.* at 614, 91 S.Ct. at 2112. Accordingly, some entanglement is allowable—it is only "excessive" entanglement that is prohibited. *Id.*

Further, the Supreme Court has also held that "routine regulatory interaction which involves no inquiries into religious doctrine, ... no delegation of state power to a religious body, and no 'detailed monitoring and close administrative contact' between secular and religious bodies ... does not of itself violate the non-entanglement command." *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 696–697, 109 S.Ct. 2136, 2147, 104 L.Ed.2d 766 (1989) (citations omitted) (holding the disallowance of certain payments to a taxpayer's church were not deductible charitable contributions under the Internal Revenue Code, and did not violate the First Amendment's Establishment and Free Exercise Clauses).

In enacting Section 1930, Congress did not intend to modify the behavior of the members of the Debtor, or any religious organization that might choose to file a Chapter 11 case, nor did it seek to violate or burden their religious beliefs.[7] The members of the Debtor have voluntarily elected to make weekly or monthly payments to the Debtor pre-petition, post-petition and post-confirmation. Knowing that the Debtor has filed a Chapter 11 case and that its only or primary source of income is the contributions it receives from its individual members, the members have continued to contribute, fully knowing that some of these contributions were to be used for payments to pre-petition creditors, as required by the Plan, or for fees and expenses due in connection with the Chapter 11 case. Even though the Debtor may be deprived of some economic benefit by having to pay the quarterly U.S. Trustee fees, it has received a greater benefit from the Bankruptcy System and the involvement of the Office of the U.S. Trustee.

Furthermore, the government plays no role in overseeing the members' payments to the Debtor. Members' payments are made directly to the Debtor—they do not pass through the hands of the government or the U.S. Trustee. Section 1930 only requires the payment of fees by the Debtor based on the amount of disbursements made by the Debtor. The members' faith or religious beliefs are not placed in check because some of their payments are used to support the U.S. Trustee and Bankruptcy Systems.

With respect to both the Debtor's and members' right to protection under the Free Exercise Clause, the Supreme Court has aptly stated that:

> Congress and the courts have been sensitive to the needs flowing from the Free Exercise Clause, but every person cannot be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs. When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.

*United States v. Lee,* 455 U.S. 252, 261, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982). More recently, other lower courts have echoed the Supreme Court's sentiment. See *In re Newman,* 203 B.R. 468 (D.Kan.1996); *In re Hodge,* 200 B.R. 884 (Bankr.D.Idaho 1996). Specifically, Chief Judge Pappas stated: "[w]hile the Constitution protects debtors, and their churches and members, from government intrusion deliberately aimed at burdening individual religious freedoms, it does not prohibit the application of those bankruptcy provisions which are facially neutral, generally applicable, and which only incidentally impute Debtor's practices." *In re Hodge,* 200 B.R. at 907.

## IV. *DISBURSING AGENT*

The Debtor has argued that if it is required to pay any post-confirmation quarterly U.S. Trustee fees, those amounts should be paid by the disbursing agent out of the Fund. There is simply nothing in the specific provisions of the Plan or in Section 1930 which would support such a contention. Furthermore, there are not sufficient equitable considerations present that would war-

---

**7.** Section 303 does not allow an involuntary case to be filed against such an entity.

rant the Court finding that it is the Debtor's pre-petition creditors rather than the Debtor itself that should bear the unexpected burden of the additional fees due as a result of the 1996 amendments to Section 1930.

## CONCLUSION

This case has been fully administered for purposes of Section 350 and Rule 3022 and an order closing the case shall be entered once the Debtor has paid all outstanding quarterly U.S. Trustee fees due post-confirmation. These quarterly fees shall be computed, as they were pre-confirmation, on the gross disbursements of the Reorganized Debtor.

**IT IS SO ORDERED.**