**In re David MOUNIER and Barbara Mounier, Debtors.**

**David Mounier and Barbara Mounier, Plaintiffs,**

v.

**United States of America, Defendant.**

**Bankruptcy No. 93–02297.
Adversary No. 98–90196.**

United States Bankruptcy Court,
S.D. California.

Oct. 6, 1998.

Michael J. Desmond, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC.

Nathan E. Jones, San Diego, CA.

Charles G. LaBella, U.S. Attorney, San Diego, CA.

### *ORDER*

JOHN L. PETERSON, Bankruptcy Judge.

Debtor/Plaintiffs, David and Barbara Mounier ("Mounier"), filed a Complaint against Defendant, the United States of America ("United States"), on April 23, 1998, seeking a determination, among other things, regarding the amount and dischargeability of taxes owing the United States. The United States filed an Answer to the Mouniers' Complaint on May 29, 1998, followed by a combined Motion for Summary Judgment and Motion for Abstention from Determining Proceeding brought pursuant to 11 U.S.C. § 505 on July 20, 1998. The Mouniers filed a response in opposition to the United State's Motion for Summary Judgment on August 3, 1998.

The Mouniers filed their voluntary Chapter 7 bankruptcy petition on March 4, 1993, and received a discharge in that case on May 5, 1994. In 1993, the Mouniers filed an "Individual Income Tax Return" for the tax year ending December 31, 1991. The amount of tax owing per the tax return was $95,772. Included in the amount due was $14,584 as a result of an early

distribution from a qualified retirement account. To correctly report the early distribution, the Mouniers completed tax form 5329, "Return for Additional Taxes Attributable to Qualified Retirement Plans (Including IRAs), Annuities, and Modified Endowment Contracts." In 1995, the Mouniers amended their 1991 federal income tax return to reflect a net operating loss carry back of $633,565 incurred in 1992 and to reflect the purported discharge of the $14,584 in tax attributable to the early withdrawal from a qualified retirement account. The Mouniers represented in the amended return that the amount attributable to the early distribution had been discharged in the Mouniers' bankruptcy in accordance with *County Sanitation Dist. No. 2 of Los Angeles County v. Lorber Indus. of California, Inc. (In re Lorber Indus. of California, Inc.),* 675 F.2d 1062 (9th Cir.1982). Reflecting the above adjustments, the amended return showed a tax owing of only $11,302, as opposed to the original tax of $95,772.

In 1996, the Internal Revenue Service sent a Notice of Levy to the Mouniers' bank—Bank of Rancho Bernardo—in an attempt to collect on the Mouniers' alleged 1991 tax liability of $189,467.40, which amount includes interest, penalties and other statutory additions. As a result of the above-mentioned Notice of Levy, the Mouniers have filed the instant Complaint arguing that the $14,584 of tax associated with the early withdrawal was discharged and that therefore, any collection efforts by the United States with regard to such amount was in violation of the discharge injunction. The United States opposes the Mouniers' Complaint, maintaining that such amount was not discharged. Based on the foregoing, the United States filed its Motion for Summary Judgment seeking a determination that the $14,584 "excise" tax was not discharged in the Mouniers' Chapter 7 bankruptcy and that, therefore, the United States did not violate the discharge injunction by attempting to collect said amount. The United States also requests that this Court abstain from determining the proper amount of the Mouniers' 1991 tax liability.

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating Rule 56(c), Fed.R.Civ.P, states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *In re Younie,* 211 B.R. 367, 373 (9th Cir. BAP 1997) (*quoting In re Aquaslide 'N' Dive Corp.,* 85 B.R. 545, 547 (9th Cir. BAP 1987)). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 608 (9th Cir.1985). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 950–52 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge. *Aquaslide,* 85 B.R. at 547. Additionally, the facts set forth therein must be admissible into evidence. *Id.*

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth

specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986). The caveat is that a mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. Nevertheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electrical Service,* 809 F.2d at 630 (*citing Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Electrical Service,* 809 F.2d at 631.

In the case at bar, the Court finds that there are no genuine issues of material fact. This finding is supported by the Mouniers' "Opposition to Motion for Summary Judgment and Abstention," which states: "The motion is based on a pure legal analysis and does not involve any questions of fact. For purposes of this motion, the allegations of the Complaint may be taken as true. [The Mouniers] concede that if the 'fee' for premature distribution from a retirement account is characterized as a tax, it would be nondischargeable." Page 2.

The "fee" referred to by the Mouniers' in their Complaint is assessed under 26 U.S.C. § 72(t) which provides:

10 –percent additional tax on early distributions from qualified retirement plans.

(1) Imposition of additional tax. If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

■ The mere fact that Congress has termed the 10% amount as a tax does not automatically render such amount a tax for purposes of determining dischargeability pursuant to 11 U.S.C. § 523. *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). In *CF & I Fabricators,* the issue was whether 26 U.S.C. § 4971(a) created an excise tax that was entitled to priority under 11 U.S.C. § 507(a)(7)(E). In that case, the Supreme Court looked beyond the mere labeling of an exaction as a tax, and instead considered the purpose of the exaction:

*Anderson* and *New York* applied the same test in determining whether an exaction was a tax under § 64(a), or a penalty or debt: "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government." *Anderson,* 203 U.S., at 492, 27 S.Ct., at 140; *New York,* 315 U.S., at 515, 62 S.Ct., at 714–715; accord *Feiring,* 313 U.S., at 285, 61 S.Ct., at 1029 (" § 64 extends to those pecuniary burdens laid upon individuals or their prop-

erty . . . for the purpose of defraying the expenses of government or of undertakings authorized by it"). Or, as the Court noted in a somewhat different context, "[a] tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." *United States v. La Franca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). *CF & I Fabricators,* 518 U.S. at 224, 116 S.Ct. 2106. Although *CF & I Fabricators* deals with the priority of tax obligations, it is nevertheless applicable to the instant dischargeability Complaint in that it underscores the difference between taxes and penalties. Here, if the obligation owing to the United States is in the nature of a tax, the dischargeability of said tax will be governed by 11 U.S.C. § 523(a)(1). If, on the other hand, the obligation is in the nature of a penalty, the dischargeability of the obligation is instead governed by § 523(a)(7).

The Tenth Circuit Court of Appeals, in *United States v. Dumler (In re Cassidy),* 983 F.2d 161 (10th Cir.1992), addressed the nature of the precise exaction at issue in this case. In *Cassidy,* the Court, using the same four part test as utilized by the Ninth Circuit Court of Appeals in *Lorber Industries, Inc.,* held the 10 percent assessment imposed under 26 U.S.C. § 72(t) was in the nature of a penalty and not a tax:

> Having decided that Congress' labeling of the Section 72(t) exaction as a tax is not determinative of its status for priority in bankruptcy, we turn to the question of whether the exaction is indeed a tax or penalty. The test established in *Feiring* for determining if an assessment is a tax or a penalty has been described as a four-part test incorporating the following criteria: (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (4) under the police or taxing power of the state. *In re Lorber Industries of California, Inc.,* 675 F.2d 1062 (9th Cir.1982); *In re Skjonsby Truck Line, Inc.,* 39 B.R. 971 (Bankr. D.N.D.1984). It is undisputed that three of the four criteria are satisfied, therefore, our inquiry focuses on whether the third prong has been met. *See* S.Rep. No. 99–313, 99th Cong., 2d Sess. (1986). The legislative history of the 72(t) exaction reveals multiple intentions of Congress.

The legislative history indicates that the basic purposes of the Section 72(t) exaction was to prevent retirement plans from being treated as savings accounts, to recapture a measure of tax benefits that have been provided prior to the withdrawal, and to deter the use of retirement funds for nonretirement purposes. The multiple intentions expressed in the legislative history do not enlighten us as to whether there is a single primary purpose. Appellants argue that since there is an indication of some public purpose (to recapture a measure of the tax benefits provided and to promote retirement savings), in conjunction with its designation as a tax, the plain meaning of the language, and the fact that it is self-assessing, the exaction is a tax under the *Feiring* test. However, there is an equally strong argument that the overall purpose is to deter withdrawals via sanctions, thus indicating that the exaction is a penalty. We agree with the district court that the *Feiring* test does not resolve the issue, and turn to bankruptcy policy.

Section 507(A)(7) of the Bankruptcy Code, granting priority to taxes, implements a broad congressional policy against punishing innocent creditors of a bankrupt. *Unified Control,* 586 F.2d at 1038. This policy has been summarized by the Supreme Court in *Simonson v.*

*Granquist,* 369 U.S. 38, 40–41, 82 S.Ct. 537, 538–539, 7 L.Ed.2d 557 (1962):

"For [§ 57(j) ] plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors."

The policy of protecting unsecured creditors from the bad conduct of the debtor is best implemented by avoiding burdening the claims of unsecured creditors with penalties that are imposed on the debtor. We agree with the district court that:

"If the purpose of this additional tax is to deter the taxpayer from withdrawing amounts and everybody agrees that that's the purpose, then the deterrent effect will be diminished, at least, if not lost, by having the creditors rather than the taxpayer be the one to actually in the end pay for the early withdrawal."

"If the additional amount is given priority over other creditors' claims, then that will subtract a large amount from the bankruptcy estate and it will discharge the debtor's liability on that additional tax; so in other words, the debtor does not bear the sanction as much as the unsecured creditors."

We therefore affirm the holding of the district court that the exaction under Section 72(t) is a "penalty" for purposes of determining priority in bankruptcy.

The next issue is whether the penalty is in compensation for actual pecuniary loss. Section 507(a)(7)(G) of the Bankruptcy Code grants priority to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(7)(G). Appellants contend that "actual pecuniary loss" merely requires some monetary loss to the government, regardless of how much of it is recaptured through the penalty. They argue that since the government forgoes collection of taxes on contributions to pension plans until distribution from those plans is made, the government loses use of the funds and potential interest. Thus, the 10 percent addition is an attempt to recoup lost revenue and is thus a pecuniary penalty.

The 10 percent penalty is assessed whenever an early withdrawal is made from a qualified pension plan, regardless of when the plan was established. The penalty is a flat rate penalty bearing no relationship to the direct financial loss of the government. This indicates an intent to punish, not to defray costs. We agree with the district court that this penalty is punitive in nature, and not entitled to priority under Section 507(a)(7)(G).

*Id.,* at 163–165.

Accepting the Tenth Circuit's characterization of the § 72(t) exaction as a penalty renders the discharge provision set forth in § 523(a)(1) inapplicable since § 523(a)(1) refers to taxes specified in §§ 507(a)(2) and 507(a)(8) [formerly § 507(a)(7) ]. Section 507(a)(2) addresses taxes incurred after the filing of an involuntary petition and is not pertinent to the facts of this case and as set forth above, the court in *Cassidy* found that the § 72(t) exaction was not a tax within § 507(a)(8). Therefore, any obligation arising as a result of § 72(t) of the Internal Revenue Code would be dischargeable under § 523(a)(1).

At least one court, however, has identified potential shortcomings of the four prong test as set out in *Cassidy* and *Lorber*. *In re Park*, 212 B.R. 430, 433–435 (Bankr.Mass.1997). In that case, the court wrote:

> The *Lorber* test has itself been restated. Because most governmental assessment schemes will satisfy the second and fourth prongs of the *Lorber* test, some courts view taxes as "involuntary exactions for a public purpose, and 'nontaxes' . . . to be voluntary payments for a private benefit." *In re S.N.A. Nut Co.*, 188 B.R. 392, 394 (Bankr.N.D.Ill. 1995); *see also In re Jenny Lynn Mining Co.*, 780 F.2d 585, 589 (6th Cir.1986).

Courts have expressed concern that the *Lorber* test is inadequate to distinguish a wide range of governmental fees and charges from true taxes. *See, e.g., In re Suburban Motor Freight, Inc.* ("*Suburban I*"), 998 F.2d 338 (6th Cir.1993) (government uses all monies collected for the public purpose of defraying expenses; thus if public purpose is determining tax factor, all monies collected would be taxes); *In re Freymiller Trucking, Inc.*, 194 B.R. 914, 915 (Bankr.W.D.Okla.1996) (stating necessity to "distinguish 'taxes' from the myriad of other compulsory charges, assessments, fees, and debts collected by governmental units from persons and used to defray the costs of government"). The Sixth Circuit, affirming *Suburban I*, addressed these concerns, particularly in light of bankruptcy policy. Noting that "equality of distribution among creditors is a central policy of the Bankruptcy Code" and "priority claims must be carefully limited since every such claim reduces the fund available to general creditors," the court narrowed the eligibility for tax priority status by adding two elements to the *Lorber* test. *In re Suburban Motor Freight, Inc.*, 36 F.3d 484, 487–89 (6th Cir.1994) ("*Suburban II*"). First, the exaction must be "universally applicable to similarly situated entities," thus ensuring that the burden and benefit of the exaction enures to the general public, and not to a discrete entity. *Id.* at 488–89. Second, granting priority status to a government claim must not "disadvantage private creditors with like claims." *Suburban II*, 36 F.3d at 489.

Still other courts favor a totality test. *See, e.g. Bell v. Brown, (In re Payne)*, 27 B.R. 809 (Bankr.D.Kan.1983) (even though *Lorber* test met, the nontax characteristics of obligation outweighed tax characteristics); *In re Columbia Packing*, 34 B.R. 403, 404, (Bankr.D.Mass.1983) (obligation did not carry tax characteristics of direct assessment by state or statutory remedy of automatic lien upon default). And at least one court has revived the tax characteristic first set forth in Anderson—that a tax must be assessed at a fixed rate set by statute. *In re Freymiller Trucking, Inc.*, 194 B.R. at 915 ("I am unable to think of a 'tax' . . . that is not based on a percentage of something, be it income, sales, corporate capital, or the value of property, a gift or inheritance.").

■ The court in *Park* presents a compelling argument for expansion of the four prong test. Nevertheless, in this case, consideration of the additional factors does not change the character of the § 72(t) exaction. While the § 72(t) exaction is applied uniformly to similarly situated entities, the exaction does disadvantage private creditors by reducing their distribution of estate assets. In the case of an early withdrawal from a qualified retirement account, the taxpayer is including such amount in gross income, and thus paying an income tax on the withdrawal. The tax resulting from the inclusion of the withdrawn amount in income is clearly a tax. However, the additional obligation imposed by § 72(t) is, as the *Cassidy* court explained, meant to "prevent retirement plans from being treated as savings accounts, to recapture a measure of tax benefits that have been provided prior to the

withdrawal, and to deter the use of retirement funds for nonretirement purposes." Such amount is not intended to provide for the support of the government. The exaction imposed by § 72(t) simply does not have the characteristics of a traditional tax. In addition, viewing such an exaction as a non-tax renders a result that furthers the underlying purpose of the Bankruptcy Code.

The fact that a § 72(t) exaction is not a tax does not end the Court's inquiry, for such exaction may be non-dischargeable under 11 U.S.C. § 523(a)(7) which excepts from discharge any debt:

to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

While § 523(a)(7) appears straightforward on its face, the Ninth Circuit has termed this exception to nondischargeability an example "of excess negatives." *McKay v. United States*, 957 F.2d 689 (9th Cir.1992). In an effort to eliminate any ambiguity caused by the excess negatives, the court in *McKay* provided the following:

Carefully parsed, the section initially makes nondischargeable a "debt that is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit." Withdrawn from this class, however, are any such fines, penalties, or forfeitures that are "compensation for actual pecuniary loss." These are dischargeable. The double negative, "does *not* discharge" and "*not* compensation for actual pecuniary loss," accomplishes this end.

Another group of penalties are withdrawn from the nondischargeable group.

These appear in parts (A) and (B) of § 523(a)(7). Part (A) withdraws tax penalties attributable to taxes which are not nondischargeable. That is, part (A) makes dischargeable tax penalties attributable to dischargeable taxes. This follows because part (A) relates "to a tax of a kind *not* specified in paragraph (1) of this subsection." 11 U.S.C. § 523(a)(7)(A) (emphasis added). Those types specified in paragraph (1) are not dischargeable taxes. In relevant part "paragraph (1) of this subsection" makes not dischargeable "any debt" that is "for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

The other group of penalties withdrawn from the nondischargeable group is described in part (B). It is quite straightforward. It makes dischargeable any tax penalty "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable.

*Id.,* at 693. As explained by the Ninth Circuit, § 523(a)(7) makes any penalty, such as that imposed under § 72(t), nondischargeable unless it falls into one of the three exceptions.

The first exception applies to penalties that are "compensation for actual pecuniary loss." The Court again turns to the Tenth Circuit's interpretation of the § 72(t) exaction as set forth in *Cassidy*. *In re Cassidy*, 983 F.2d at 164–65. In that case, the court found:

The penalty is a flat rate penalty bearing no relationship to the direct financial loss of the government. This indicates an intent to punish, not to defray costs. We agree with the district court that this penalty is punitive in nature, and

not entitled to priority under Section 507(a)(7)(G).

Again, the Court finds the *Cassidy* court's characterization of the § 72(t) exaction persuasive and adopts such finding for the case at bar. Consequently, the penalty imposed under § 72(t) is not one of the three exceptions set forth in § 523(a)(7) as it is not a form of "compensation for actual pecuniary loss."

Next, the penalty at issue is not attributable to a dischargeable tax. If this penalty is attributable to any tax at all, it is attributable to the income tax resulting from the inclusion in income of the amount withdrawn from the retirement account. The income tax is, as the Mouniers concede, not a dischargeable obligation and even if the penalty is not attributable to the resulting income tax, neither is it attributable to a dischargeable tax. Thus, the obligation at issue in this case does not fall within one of the exceptions of § 523(a)(7)(A).

Finally, the obligation at issue first became due on April 15, 1992, and the Mouniers filed their petition on March 4, 1993. Thus, the penalty is not subject to the exception as set forth in § 523(a)(7)(B). Given the foregoing, the Court finds that the obligation imposed pursuant to 26 U.S.C. § 72(t) is a nondischargeable penalty under 11 U.S.C. § 523(a)(7). Consequently, the United State's post-discharge collection efforts did not violate the discharge injunction and therefore, Counts Two and Three of the Mouniers' Complaint must be dismissed with prejudice.

 The remaining Counts in the Mouniers' Complaint—Counts One and Four—relate generally to the amount and legality of the remainder of the Mouniers' 1991 tax liability. The United States requests that this Court abstain from determining the Mouniers' 1991 tax liability as such a determination will have no impact in the Mouniers' no-asset Chapter 7 bankruptcy. After careful consideration, this Court agrees that it should abstain from determining the Mouniers' 1991 tax liability.

Section 505(a) provides that a bankruptcy court "*may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or nor paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Section 505(a) is discretionary and as the United States correctly notes, the majority of courts considering § 505(a) do abstain from determining the amount of a taxpayer's liability when there is no impact on the Chapter 7 estate.

The instant case is closed and the Mouniers' have received their discharge. Thus, any determination, by this Court or another court, regarding the legality and/or amount of tax liability for the tax year ending December 31, 1991, will have no impact on the bankrupt estate. In addition, the Tax Court is more familiar with the intricacies of the Internal Revenue Code, and is, therefore, in a better position to fix the amount of the Mouniers' 1991 tax liability. As a consequence, this Court finds that dismissal of the Mouniers' entire Complaint is appropriate. In light of the foregoing,

IT IS ORDERED the United State's Motion for Summary Judgment, filed July 20, 1998, is granted; and the Complaint filed by David Mounier and Barbara Mounier on April 23, 1998, is dismissed with prejudice.