**In re Willis L. and Paula C. STARNES, Debtors.**

**Willis L. and Paula C. Starnes, Appellants,**

v.

**United States of America, Appellee.**

**No. Civ.A. 3–98–CV–1932–P.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 20, 1998.

Wm B. Hickman, Dallas, Texas, for appellants.

Denise G. Dengler, Dallas, Texas, for appellee.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court is Willis L. and Paula C. Starnes' Appeal of the Bankruptcy Court's Findings of Fact and Conclusions of Law and Amended Order of May 5, 1998. The Appellants appeal the Bankruptcy Court's decision which refused Appellants § 1244 stock losses for 1992 and 1993. Appellants also appeal the Bankruptcy Court's decisions to reduce Appellants' capital loss

carryover to 1994 by one-third and to uphold the accuracy-related penalty. This Court AFFIRMS the Bankruptcy Court's decision in part, and REVERSES and VACATES in part.

## STANDARD OF REVIEW

"When reviewing a Bankruptcy Court's decision in a 'core proceeding,'[1] a district court functions as an appellate court and applies the standard of review generally applied in federal courts of appeals." *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir.1992). Accordingly, the Bankruptcy Court's factual determinations are subject to a "clearly erroneous" standard of review. *Kennard v. MBank Waco, N.A. (In re Kennard)*, 970 F.2d 1455, 1457 (5th Cir.1992); *Berryman Prods., Inc. v. Nationwide Mutual Ins. Co. (In re Berryman)*, 183 B.R. 463, 466 (N.D.Tex.1995). A Bankruptcy Court's conclusions of law are reviewed *de novo*. *Kennard*, 970 F.2d at 1458. Furthermore, the legal effects of findings of fact are reviewed *de novo*. *See Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

## BACKGROUND

### A. Procedural History

This case was commenced by Willis L. and Paula C. Starnes ("Debtors" or "Appellants") on May 17, 1996 as a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code. Appellants' Br. at 3. On September 20, 1996, the Internal Revenue Service ("IRS" or "Government") claimed unsecured and priority taxes from debtors for additional income taxes due in years 1992 and 1993, for income tax due in years 1994 and 1995, and for employment taxes due in the third quarter of 1995. *Id.*

On September 27, 1996, the Government asserted a deficiency in income tax for 1992 and 1993. *Id.* On January 15 and 16, 1998, the Bankruptcy Court heard Debtors' objection to the IRS' claim. *Id.* at 4. On January 16, 1998, the Court found the facts based on the hearing and rendered a decision on Debtors' objection. *Id.* In Findings of Fact and Conclusions of Law and an Amended Order dated May 5, 1998, the Bankruptcy Court documented the decision it rendered on January 16. *Id.* On April 9, 1998, Debtors filed a motion with the Bankruptcy Court to reconsider its January 16 ruling that Debtors' capital loss carryover to 1994 be reduced by one-third. That motion was denied. *Id.*

The January 16, 1998 decision held the following: (1) Debtors are not allowed a capital loss on the sale of Regan Austin, Inc. stock to Everett Core; (2) Debtors are not allowed an ordinary loss under § 1244 of the Internal Revenue Code for years 1992 and 1993; (3) Debtors are liable for an accuracy-related penalty for years 1992 and 1993; and (4) the Debtors' capital loss carryover to 1994 allowed by the IRS is reduced by one-third for a total of $98,886.67. Findings of Fact and Conclusions of Law ¶¶ B–E.

Appellants appeal the Bankruptcy Court's decision on seven bases. First, Appellants contend that the Bankruptcy Court erred in finding that Appellants were not entitled to a $100,000 ordinary loss pursuant to § 1244 of the Internal Revenue Code in taxable years 1992 and 1993. Appellants' Br. at 2. Second, they maintain that the Bankruptcy Court erred in refusing to address whether stock is "issued" for purposes of § 1244 of the Internal Revenue Code when the investor pays for the stock. *Id.* Third, Appellants assert that the Bankruptcy Court erred in refusing to address whether payments made by a stockholder for the benefit of a corporation should be included in the stockholder's basis in corporate stock. *Id.* Fourth, Appellants argue that the Bankruptcy Court erred by holding that Appellants failed to provide the Court with records sufficient to distinguish their § 1244 stock from any other stock they might have owned in Regan Austin, Inc. *Id.* Fifth, Appellants maintain that the Bankruptcy Court erred in imposing the accuracy-related penalty of § 6662 of the Internal Revenue Code. *Id.* Sixth, Appellants argue

---

1. "A 'core proceeding' is one that 'invokes a substantive right provided by Title 11 [the Bankruptcy Code] or [ ] is a proceeding that by its nature could arise only in the context of a bankruptcy case.'" *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103 n. 1 (5th Cir.1992) (citing *In the Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987)).

that the Bankruptcy Court did not have jurisdiction to reduce Appellants' capital loss carryover to $98,886.67 for taxable year 1994. *Id.* at 3. Finally, Appellants maintain that they successfully shifted the burden of proof to the Government, contrary to the conclusion of the Bankruptcy Court. *Id.*

### B. Facts

Appellants Willis L. and Paula C. Starnes are a married couple who filed a joint income tax return for taxable years 1992 and 1993. 1 R. Tr. 16.[2] In 1991, Willis Starnes ("Starnes") became interested in a corporation known as Regan Austin, Inc. Regan Austin, Inc. bought, sold, and manufactured small notions and leather goods. 1 R. Tr. 17. Regan Austin, Inc. was a Texas corporation that was established in 1991. 1 R. Tr. 20. The corporation was incorporated on March 5, 1991 and was authorized to issue 10,000 shares of common stock. Tr. Ex. E.[3] None of its gross receipts were from royalties, rents, dividends, interest, annuities, or from the sale or exchange of securities. 1 R. Tr. 20. The corporation did not receive money or property valued at $1,000,000 or more for its stock as contributions to capital and as paid-in surplus. *Id.* The corporate books and records are no longer available. *Id.*

In January 1992, Starnes purchased from Young Kwang Kim 5, 100 shares of Regan Austin, Inc. stock for $30,000. *Id.* at 21. On February 3, 1992, Starnes sold his 5, 100 shares of Regan Austin, Inc. stock to Everett Core ("Core"), his ex-brother-in-law, for $40.00. 1 R. Tr. 26–28. The following day, Core signed the ownership of stock back to Starnes. Findings of Fact and Conclusions of Law ¶ 5. Starnes claimed a $29,960 capital loss on his 1992 tax return for the sale of stock to Core. 1 R. Tr. 28–29.

In December 1992, Starnes' accountant, Jerry Robbins, told Starnes that if he was issued stock by Regan Austin, Inc., he could take an Internal Revenue Code 1244 stock loss. 2 R. Tr. 23–24. Backdated documents, a subscription agreement, and a stock sale agreement, prepared in 1994 or later, purport to indicate that Starnes was issued 301 shares of Regan Austin, Inc. stock on December 23, 1992. 1 R. Tr. 29–39. The agreement states that the corporation elected to issue the stock under § 1244 of the Internal Revenue Code. 1 R. Tr. 29–32. That "stock" was purchased by Starnes for $100,574.47. 1 R. Tr. 29. Starnes testified that the documents were created years later in memorium of events that took place in 1992. 1 R. Tr. 29–39. He also testified that those 301 shares were never issued.[4] 1 R. Tr. 197. On December 31, 1992, Starnes sold his 301 "shares" of the corporation to Joy Nunn for $1.00. 1 R. Tr. 33–35. This is evidenced by another backdated document—a stock sale agreement. The stock sale agreement states that Appellant is a medical doctor who wishes to devote more time to his medical practice and less time to Regan Austin, Inc. However, Appellants' evidence at trial indicated that Starnes invested over $120,000.00 in Regan Austin, Inc. the following year. Willis and Paula Starnes claimed a $100,000 ordinary loss under § 1244 on their income tax return for 1992. Findings of Fact and Conclusions of Law ¶ 4.

According to a subscription agreement dated December 1, 1993, Starnes purchased one share of Regan Austin, Inc. stock for $126,735.37. The agreement states that the corporation elected to issue the "stock" under § 1244 of the Internal Revenue Code. 1 R. Tr. 35–37. The subscription documents were prepared in 1994 or later and backdated to December 1, 1993. 1 R. Tr. 35–37. The Bankruptcy Court found that Regan Austin, Inc. never issued any stock to Starnes. Ct.'s Ruling at 3. The Bankruptcy Court also found that the backdated documents purporting to show that Starnes purchased stock from Regan Austin, Inc. were contrived. Findings of Fact and Conclusions of Law ¶ 3.

---

2. ___ R. Tr. ___ refers to the two volumes of trial transcript designated by volume number and page number within each volume.

3. Tr. Ex. ___ refers to trial exhibits, designated by exhibit number or letter. At trial, Appellants' exhibits were numbered and the Government's exhibits were lettered.

4. The Bankruptcy Court found that Regan Austin, Inc. never issued any stock to Starnes. Ct.'s Ruling at 3.

Regan Austin, Inc. went out of business at the end of 1993 and thus, Starnes' one share became worthless at that time. 1 R. Tr. 38. Willis and Paula Starnes claimed a $100,000 ordinary loss under § 1244 on their income tax return for 1993. 1 R. Tr. 40.

In 1994, Betty Graham of the Internal Revenue Service asked Jerry Robbins, the Starnes' accountant, to provide her with documentation supporting the § 1244 deductions. 2 R. Tr. 28–31. Robbins was unable to do so and contacted the Starnes' attorney, Scottie Ashley, on February 15, 1994, requesting that documents be prepared to substantiate the purported 301 share issuance of December 1992 and the one share issuance of 1993. 2 R. Tr. 31–32. Documents were prepared and backdated by Scottie Ashley. 1 R. Tr. 185–86; 2 R. Tr. 28–42. Appellants did not have any stock certificates from Regan Austin, Inc. to substantiate the stock purchases. Findings of Fact and Conclusions of Law ¶ 3;

Before the Court on appeal is whether the Bankruptcy Court erred in allowing the IRS to disallow the Starnes' two $100,000 ordinary loss deductions taken under § 1244 in taxable years 1992 and 1993. Also before the Court is whether the Bankruptcy Court properly upheld the accuracy-related penalty. Furthermore, Appellants challenge the Bankruptcy Court's decision to reduce Appellants' capital loss carry forward to 1994 by one-third to $98,886.67. Finally, Appellants argue that the Bankruptcy Court erred in concluding that Appellants did not sustain their burden of proof on their objection.

## DISCUSSION

### A. Section 1244 Stock

Appellants first ask the Court to determine whether the Bankruptcy Court erred in holding that Appellants were not entitled to a $100,000 ordinary loss, pursuant to § 1244 of

the Internal Revenue Code in taxable years 1992 and 1993. Appellants' Br. at 2. This issue is one of law that will be reviewed *de novo*. However, the underlying factual findings by the Bankruptcy Court are reviewed for clear error.

■ Ordinarily, when an investment in a corporation becomes worthless, the investor's loss is treated as a capital loss and may be deducted only from capital gains. 26 U.S.C.A. § 1211 (1988). Section 1244 of the Internal Revenue Code permits investors to treat losses on "section 1244" stock as ordinary losses rather than as capital losses. 26 U.S.C.A. § 1244(a).[5] "When a loss is suffered on stock which qualifies under § 1244 ... the investor may treat it as an ordinary loss, which is deductible from other taxable income. This is a significant advantage." *Bates v. United States*, 581 F.2d 575, 577 (6th Cir.1978).

■ To qualify as § 1244 stock, the stock must be common stock issued for money or other property by a domestic small business corporation,[6] fifty percent of whose income does not come from investment activity. 26 U.S.C.A. 1244(c). Section 1244 was designed to encourage formation and continuation of small businesses by reducing prospective financial risks in the event that the corporation should fail, and to encourage that funds are available for the financing of small businesses. *Bruce v. United States*, 409 F.2d 1317, 1318 (5th Cir.1969).

At trial, the evidence was undisputed that Regan Austin, Inc. was a domestic corporation, a small business corporation, and that the corporation did not receive gross receipts from investment activity. Appellants' Br. at 7–8. What was disputed and what is before the Court is whether common stock was, in fact, issued by the corporation and whether Starnes purchased stock at all in December 1992 and December 1993. The Bankruptcy

---

5. Section 1244 of the Internal Revenue Code reads in pertinent part as follows: "In the case of an individual, a loss on section 1244 stock issued to such individual ... which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as an ordinary loss." 26 U.S.C.A. § 1244 (1988).

6. A "small business corporation" is a corporation in which money and property received by the corporation for stock, as a contribution to capital, and as paid-in surplus, does not exceed $1,000,000. 26 U.S.C.A § 1244(c)(3).

Court held that Regan Austin, Inc. did not sell stock to Starnes, and thus his investment did not satisfy the definitional requirements of § 1244 and could not be subject to its loss provisions. Ct.'s Ruling at 3. The Bankruptcy Court found that the backdated documents and Starnes' testimony purporting to prove the purchase of stock in 1992 and 1993 were not credible evidence. Those findings are supported by the record and are not clearly erroneous.

 Appellants insist that stock was issued to and purchased by Starnes and that such stock qualifies as § 1244 stock. They maintain that the stock was issued to Starnes when he paid for it and that the Bankruptcy Court erred by concluding that the December 1992 and December 1993 transactions were not deductible as ordinary losses under § 1244. The Court disagrees. In order for these transactions to qualify for ordinary loss status under § 1244, "stock" must have been "issued." 26 U.S.C. § 1244(a), (c). The Texas Business Corporation Act states that a corporation may issue only the number of shares stated in its articles of incorporation. Tex.Bus.Corp.Act.Ann.Art. 2.12A (Vernon 1980 & Supp.1998).

 The Articles of Incorporation of Regan Austin, Inc. authorized the corporation to issue 10,000 shares of stock. Tr. Ex. E. All 10,000 shares were issued prior to Starnes' December 1992 transaction. 2 R. Tr. 59–60. There was no evidence of any modification to Regan Austin, Inc.'s Articles that permitted the authorization of additional shares. Therefore, since Regan Austin, Inc. was not authorized to issue any more shares, Starnes could not have purchased any shares from Regan Austin, Inc. in 1992 or 1993. Since there was no stock issued to or purchased by Starnes, Appellants are not entitled to the $100,000 ordinary losses for 1992 and 1993.

 Further, there is some evidence in the record to support Starnes' contention that he intended his 1992 and 1993 investments in Regan Austin, Inc. to be considered purchases of § 1244 stock. The Bankruptcy Court, however, chose not to place any credibility in Starnes' testimony or in the backdated documents, and thus refused to find that Starnes purchased § 1244 stock. Considering the two clearly bogus "sales" of stock in 1992 that Starnes attempted to manufacture, the Bankruptcy Court's refusal to find Appellants' evidence credible is understandable and is supported by the record. As the Government correctly notes, a transaction designed solely to obtain favorable tax treatment defeats rather than promotes the purpose of § 1244. Appellee's Br. at 12; *See Bruce,* 409 F.2d at 1318.

The Court concludes that neither the December 1992 transaction for $100,574.47 nor the December 1993 transaction for $126,735.37 are subject to the ordinary loss provisions of § 1244. As a result, the Court concludes that the Bankruptcy Court did not err in its rulings on issues one, two, three and four.

### B. Accuracy–Related Penalty

 Appellants ask the Court to determine whether the Bankruptcy Court erred in imposing upon Appellants the accuracy-related penalty of § 6662 when the Appellants relied on a certified public accountant for advice and preparation concerning their tax returns. Section 6662(b)(1) of the Internal Revenue Code imposes a penalty of twenty percent of a tax underpayment when the taxpayer acted negligently or with disregard of the rules or regulations. 26 U.S.C.A. § 6662(b)(1) (1989 & Supp.1998).[7] "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code and "disregard" includes any careless, reckless or intentional disregard. *Id.* § 6662(c). A court may not impose this penalty when there is reasonable cause for such underpayment and the taxpayer acted in good faith with respect to the underpayment. *Id.* § 6664(c)(1). The taxpayer has the burden of proving that he did what a reasonably prudent person would do under similar cir-

---

7. Section 6662 reads as follows: "(b) This section shall apply to the portion of any underpayment which is attributable to I or more of the following: (1) Negligence or disregard of rules or regulations ..." 26 U.S.C.A. § 6662(b)(1).

910

cumstances. *Skeen v. Comm'r*, 864 F.2d 93, 96 (9th Cir.1989).

Appellants assert that when a taxpayer, in preparing his tax return, relies on a certified public accountant for advice on and preparation of his tax return, the accuracy-related penalty is inapplicable as a matter of law. Appellants' Br. at 2, 14. They insist that because they hired an accountant to prepare their tax returns, they cannot be subject to the accuracy-related penalty of the Internal Revenue Code.

■ While good faith reliance on the advice of an accountant is a defense to the underpayment of income tax, merely hiring an accountant does not insulate a taxpayer from negligence penalties. *Stroud v. United States*, 906 F.Supp. 990, 996–97 (D.S.C.1995); *see Howard v. Comm'r*, 931 F.2d 578, 582 (9th Cir.1991); *Skeen*, 864 F.2d at 96.

Thus, the Bankruptcy Court did not err by assessing the negligence penalty against Appellants when Appellants retained an accountant to assist them in preparing their tax returns. The Court rejects Appellants' interpretation of the law and concludes that the Bankruptcy Court did not commit error in assessing the penalty on this basis.

It is unclear whether Appellants also intended to assert on appeal that the Bankruptcy Court erred by imposing a penalty when Appellants proved they relied in good faith on the advice of their accountant with respect to the underpayment. Assuming that Appellants intended to appeal the accuracy-related penalty on this basis, the Court will analyze it accordingly. As stated *supra*, the taxpayer has the burden of proving that he did what a reasonably prudent person would do under similar circumstances with regard to underpayment. *Skeen v. Comm'r*, 864 F.2d 93, 96 (9th Cir.1989). The Bankruptcy Court's determination that Appellants failed to meet their burden of proving due care is a finding of fact, reviewed for clear error. *Id.*

■ The Court rejects on several bases Appellants' assertion that the Bankruptcy Court erred in concluding that Appellants' reliance on Robbins' advice was not in good faith. First, there is sufficient evidence in

the record that Appellants' reliance was not "good faith" reliance. Appellants did not supply Robbins with all the information necessary to properly prepare the 1992 and 1993 tax returns. *See Human v. Comm'r*, 1998 RIA TC Memo at 98–597 ¶ 98, 106 ("To show good faith reliance, the taxpayer must show that the return preparer was supplied with all the necessary information and the incorrect return was the result of the preparer's mistakes."). Appellants provided Robbins with only "a printout of his accounting records ... [a]nd some verbal representations" in 1992 and "a draft copy" of the return in 1993. 1 R. Tr. 15. Appellants have the burden of proving they are not liable for this penalty and offer no evidence that the incorrect return was the fault of Robbins. *Human*, 1998 RIA TC Memo ¶ 98–106.

The Bankruptcy Court also could have properly found that Starnes did not "rely" on Robbins for any advice that ultimately resulted in the underpayment. Although Robbins told Starnes that he could deduct a loss from the purchase of stock as an ordinary loss, the Bankruptcy Court could have properly concluded that Robbins did not advise Starnes to misdescribe investments as issuances of stock, when in fact, no stock was ever issued.

■ The Bankruptcy Court imposed the penalty on Appellants because "of the way the debtor's transactions with Regan Austin, Inc. were handled." Findings of Fact and Conclusions of Law ¶ E. Presumably, the lower court disapproved of Appellants' negligent conduct and disregard of the rules of the Code, even in the absence of the advice of a professional. The two spurious "sales" of stock in 1992 are clear evidence of a lack of good faith. Purchasing stock at a high price one day and then selling it a few days later for nearly nothing, makes no economic sense. No reasonable and ordinarily prudent person would have done this under the circumstances. At the very least, this conduct constitutes negligence or intentional disregard of the Code's rules and regulations. The Bankruptcy Court did not err in concluding that Appellants' attempt to manipulate the rules in order to benefit from favorable tax treatment was improper and Appellants were not

improperly subjected the accuracy-related penalty of § 6662.

## C. Reduction of Capital Loss Carryover

Appellants challenge the Bankruptcy Court's decision to reduce Appellants' capital loss carry forward to 1994 by one-third to $98,886.67. They insist that because neither party pled such a reduction, there was no "actual controversy" before the Bankruptcy Court and therefore the Bankruptcy Court was without jurisdiction to decide the issue. Appellants' Br. at 15–16. Further, they insist that they did not impliedly consent to the reduction because the issue of loss carryover was never in dispute. *Id.* at 16.

The Bankruptcy Court found that "the evidence presented at the hearing raised the issue of the amount the Debtor had really invested in Regan Austin and the issue of that amount was tried before this Court." Order Denying Debtor's Mot. to Reconsider at 4. The Bankruptcy Court further found that Appellants "could not substantiate $148,330.00 worth of capital contributions" and that the issue was tried by implied consent pursuant to Fed.R.Civ.P. 15(b). *Id.* The Fifth Circuit has held that whether an issue has been tried by implied consent turns on:

> whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond. *Portis v. First Nat'l Bank of New Albany, Ms.,* 34 F.3d 325, 332 (5th Cir.1994).

The record in this case does not support a finding that the issue of loss carryover was tried by consent. Following an audit of Appellants' tax returns, the IRS allowed a loss carryover for 1994 of $148,330.00. The IRS allowed the full amount of claimed loss for 1992, which totaled $130,574.00, but reduced Appellants' claimed loss for 1993 from $126,735.37 to $21,238.00. At trial, Appellants challenged the disallowance of ordinary losses for 1992 and 1993 as well as the reduction of the claimed loss in 1993. All of the documents on which Appellants relied to establish their losses for 1992 and

1993 were introduced at trial. However, the transcript of the hearing in the Bankruptcy Court reveals that the questioning of the witnesses centered around the disallowed losses for 1993. Starnes was asked at trial if the amount of his investment with Regan Austin, Inc. in 1992 was disputed by the IRS. He answered "no," and this was not controverted by the Government. When Betty Graham, the IRS examiner, was questioned about the amount of the 1992 investment, Appellants objected on the basis that the 1992 amount was not in dispute. The Government agreed that the amount of 1992 investments was not in dispute, but argued that the question went to the issue of the disallowance of certain checks from 1993. Ms. Graham went on to explain how the change in payee on the checks from 1992 to 1993 was one of the factors leading to her decision to disallow many of the checks from 1993. Finally, Ms. Graham answered "yes" when asked by Appellants if it was the Government's position that Appellants should have a total capital loss of $130,574.00 for 1992, and a capital loss of $21,238.00 for 1993. 2 R. Tr. 129–130.

From the above, it is clear that the issue of the total amount of the capital loss carryover allowed by the IRS for 1992 was not tried by consent. The Government's questions pertaining to the 1992 investments were for the purpose of distinguishing the 1992 checks from the 1993 checks in order to explain the disallowance of the 1993 checks. The Government repeatedly stated at trial that it was not disputing the loss amounts from 1992 but was only disputing the nature of the claimed losses for that year. Since the evidence regarding the 1992 investments was also relevant to the issue of disallowed losses for 1993, it cannot be said that the issue of the amount of 1992 losses was tried by consent "absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." *Portis,* 34 F.3d at 332. There was no such clear indication from the Government in this case. As a result, Appellants had no reason to believe that the Government was raising or disputing the issue of the total amount of the capital loss carryover allowed in 1992.

The Government asserts that the issues of capital loss, ordinary loss and amount of carryover are inextricably intertwined, and by contesting one issue, appellants impliedly consented to having the Bankruptcy Court evaluate how the other issues were affected. The Government argues that the Bankruptcy Court's allowance of any of Appellants' claims would have reduced the capital loss carryover for 1994 that was allowed by the IRS. What the Government's argument fails to recognize, however, is that recharacterizing the nature of the losses allowed would not change the total amount of losses permitted. For example, allowance of the ordinary loss for 1992 would allow Appellants to take a $100,000.00 ordinary loss for 1992. This would reduce the capital loss carryover for 1994 by $100,000.00. However, the total amount of loss allowed by the IRS, $148,330.00, would remain the same. Only the nature of the loss allowed would change. The issue before the Bankruptcy Court concerned the nature of the losses allowed—an issue distinct from the total amount of losses allowed. Thus, evidence that went to the issue of the nature of the loss allowed did not necessarily raise the issue of the total amount of loss. The issue of the total loss allowed was before the Bankruptcy Court only to the extent that Appellants disputed the IRS' disallowance of over $100,000.00 of claimed investments in 1993. The Bankruptcy Court ruled in favor of the Government on that issue, and that finding is not clearly erroneous. However, the issue of whether to reduce the capital carryover loss allowed by the IRS was not before the Bankruptcy Court and was not tried by consent. Therefore, the Bankruptcy Court's reduction of the carryover loss was in error and that ruling is REVERSED and VACATED. Appellants are allowed a capital loss carryover of $148,330.00 for 1994.

### D. Burden of Proof

Appellants argue that the Bankruptcy Court erred in concluding that the Appel-

lants did not present evidence sufficient to defeat the IRS's *prima facie* validity of proof of claim. Appellants insist that they presented sufficient evidence to defeat the *prima facie* effect of the proof of claim and thus, the burden of persuasion should have shifted back to the Government.

 A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. *Fullmer v. United States,* 962 F.2d 1463, 1466 (10th Cir.1992); *In re Allegheny Int'l Inc.,* 954 F.2d 167, 173 (3d Cir.1992). When an objection to the claim is presented, the burden of proof remains on the objector to rebut this *prima facie* effect. *Fullmer,* 962 F.2d at 1466. To rebut the claim, the objector must present evidence sufficient "to refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny, Int'l, Inc.,* 954 F.2d at 173–74. Only then does the burden shift back to the Government. *Id.*

 The Bankruptcy Court concluded that Appellants failed to shift that burden. The Bankruptcy Court found the documentation lacking, the Debtors' witnesses incredible, and the backdated documents unreliable. Findings of Fact and Conclusions of Law ¶ G.

Appellants' argument that the Bankruptcy Court erred in refusing to find their evidence persuasive or credible is an attack on the Bankruptcy Court's fact finding, subject to review for clear error. The trial court's factual findings are not clearly erroneous and Appellants' argument that they carried their ultimate burden of persuading the Bankruptcy Court lacks merit. The Court agrees with the Bankruptcy Court's conclusion and sustains its holding that Debtors failed to shift the burden to the IRS.[8]

### CONCLUSION

Accordingly, for the reasons stated herein, the decision of the Bankruptcy Court is AF-

---

**8.** Debtors insist that the "trial court required the appellants prove the government's claim by a preponderance of the evidence, which is not the law." Appellants' Br. at 18. However, Appellants fail to cite either the record or any legal authority in support of their argument. After reviewing the record, the Court does not find any mention that the Bankruptcy Court required Appellants to prove the Government's claim by a preponderance of the evidence.

FIRMED in part, and REVERSED and VA-CATED in part.

SO ORDERED.