**In re NATIONAL STEEL CORP. et al., Debtors.**

**No. 02 B 08699.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 24, 2005.

Ann Marie Bredin, Chicago, IL, Attorney for Objector to the Claim.

Mark Browning, Texas Comptroller of Public Accounts, Attorney for Claimant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the twenty-seventh omnibus objection of the NSC Creditor Trust (the "Trust") and the NKK Litigation Trust to the classification as a priority claim of Claim No. 5370 filed by the Texas Comptroller of Public Accounts (the "Texas Comptroller") for unpaid state corporate franchise tax owed by National Steel Corporation for tax year 2002.[1] For the reasons stated herein, the Court finds that the franchise tax is an excise tax for purposes of 11 U.S.C. § 507(a)(8)(E). Accordingly, the Court overrules the objection and holds that the Texas Comptroller's claim is entitled to

---

1. The NSC Creditor Trust and the NKK Litigation Trust also objected to the classification as a priority claim of the Texas Comptroller's proof of Claim No. 2579 for insurance premium tax in the amount of $757.67. The Texas Comptroller has failed to respond to the objection to this claim, noting that "[s]uch amount is not worth the time and expense of the Court or parties to argue about." Surreply at 1 n. 1. Accordingly, the instant Memorandum Opinion addresses only the objection to Claim No. 5370.

payment on an unsecured priority basis in the amount of $129,084.00.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. UNDISPUTED FACTS AND BACKGROUND

The facts in this matter are not in dispute. On March 6, 2002, National Steel Corporation and certain of its subsidiaries and affiliates (collectively, "NSC") filed voluntary petitions for relief under Chapter 11. Objection to Claims at ¶ 1. The Court confirmed NSC's First Amended Joint Plan of Liquidation (the "Plan") on October 23, 2003, and the Plan went into effect about two months later, on December 19, 2003. Id. at ¶ 8. Under both the Plan and the NSC Creditor Trust Agreement, substantially all of NSC's assets were transferred to the Trust, and the Trust obtained authorization to pursue objections to claims. Id. at ¶ 9. Accordingly, the Trust identified certain claims asserted against NSC as "objectionable" and, thus, objected to "the allowance, amount, classification and/or treatment of those [c]laims." Id. at ¶ 12.

On August 20, 2004, the NSC Creditor Trust and the NKK Litigation Trust filed their twenty-seventh omnibus objection to claims through which they sought entry of an order reducing, reclassifying, disallowing and expunging, or otherwise addressing the claims determined to be objectionable. Id. at ¶ 13. Among those claims was an unsecured priority proof of claim, numbered 5370, in the amount of $129,084.00, filed on August 7, 2002 against NSC for state corporate franchise tax for 2002 by the Texas Comptroller (the "Claim"). Response at ¶ 1; Reply at ¶ 2. The basis of the objection to the Claim was that it was "improperly characterized, in whole or in part, as a ... priority claim."[2] Objection to Claims, Ex. A, at 19.

On October 26, 2004, the Texas Comptroller filed a response to the objection, asserting that the state corporate franchise tax is an excise tax entitled to priority under § 507(a)(8)(E) of the Code and that, accordingly, the objection should be denied. Response at ¶¶ 3 and 4. The Trust filed a reply on January 20, 2005, arguing in direct contradistinction that the Texas franchise tax is, in fact, not an "excise tax" imposed on a "transaction" for purposes of § 507(a)(8)(E) and that it is, therefore, not entitled to payment on a priority basis.[3] On February 1, 2005, the Texas Comptroller filed a surreply, reasserting its position and requesting that the Claim be allowed as filed.

---

**2.** The basis for the objection reads as follows: "CLASSIFICATION—The asserted claim has been improperly characterized, in whole or in part, as a secured or priority claim." Objection to Claims, Ex. A, at 19. As the Texas Comptroller has not asserted secured status, the Court presumes that the Trust objects to the priority of the Claim.

**3.** In its reply papers, the Trust also alleged, for the first time, that it was entitled to, but

had not yet received, a refund in the amount of $10,510.00 for overpayment of franchise tax for 2003. Reply at ¶ 6. On February 10, 2005, the Trust filed a notice indicating that NSC had received the refund subsequent to the filing of the reply. Notice of Receipt at ¶ 3. Accordingly, the Trust has withdrawn its request for relief related solely to the overpayment. Id. at ¶ 4.

The parties do not dispute that the Texas Comptroller is a governmental unit, that it holds an unsecured claim, or that the obligation to pay the corporate franchise tax accrued within the applicable temporal boundaries. Nor do the parties dispute the amount of franchise tax owed by NSC for the period at issue. Rather, the sole question presented is whether the franchise tax constitutes an excise tax within the meaning of § 507(a)(8)(E). If it does, then the Claim is entitled to payment on a priority basis.

### III. *APPLICABLE STANDARDS*

#### A. Objection to Claims

▮ Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim constitutes prima facie evidence of the validity of the claim. Fed. R. Bankr.P. 3001(f); *Starnes v. United States (In re Starnes)*, 231 B.R. 903, 912 (N.D.Tex.1998); *In re Farley, Inc.*, 211 B.R. 889, 894 (Bankr.N.D.Ill.1997); *S.N.A. Nut Co. v. Tulare Nut Co. (In re S.N.A. Nut Co.)*, 204 B.R. 537, 540 (Bankr.N.D.Ill. 1997); *see also* 11 U.S.C. §§ 501 and 502(a). Creditors who claim priority status usually bear the burden of showing that they are entitled to the asserted priority. *In re Chi. P'ship Bd., Inc.*, 237 B.R. 726, 732 (Bankr.N.D.Ill.1999). However, the United States Supreme Court has noted that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation...." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Thus, "in the absence of modification expressed in the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it." *Id.* at 26, 120 S.Ct. 1951. Accordingly, the taxpayer bears the burden to produce some evidence to rebut the presumption of the validity of a tax claim. *Id.* at 20, 120 S.Ct. 1951; *see also Starnes*, 231 B.R. at 912; *S.N.A. Nut*, 204 B.R. at 540. To meet this burden, the taxpayer objecting to a claim must present sufficient evidence to "refute at least one of the allegations that is essential to the claim's legal sufficiency." *Starnes*, 231 B.R. at 912 (*quoting In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992)) (internal quotation omitted). Only then does the burden shift back to the creditor claimant. *Id.*

In the matter at bar, the properly filed claim of the Texas Comptroller constitutes prima facie evidence of the validity of the claim. As the taxpayer and objecting party, the Trust has the burden of presenting evidence to rebut the validity of the priority classification. Only if that burden is met must the claimant, the Texas Comptroller, prove entitlement to the claim.

#### B. 11 U.S.C. § 507: Priority of Claims

Section 507(a) of the Bankruptcy Code sets forth, in descending order, nine categories of claims that are entitled to priority in bankruptcy cases. 11 U.S.C. § 507(a). This priority schedule is designed to insure payment to certain classes of claims by requiring that they be paid before other claims. *New Neighborhoods, Inc. v. W. Va. Workers' Comp. Fund*, 886 F.2d 714, 718 (4th Cir.1989); *In re Olga Coal Co.*, 194 B.R. 741, 745 (Bankr. S.D.N.Y.1996). However, the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among its creditors in the prescribed order of priority as Congress has legislated. *See Joint Indus. Bd. of Elec. Ind. v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968). Thus, provisions granting priority in bankruptcy are narrowly construed. *Olga Coal*, 194 B.R. at 745; *In re Dynacircuits, L.P.*, 143 B.R. 174, 176 (Bankr.N.D.Ill.1992); *In re*

*O.P.M. Leasing Servs., Inc.,* 60 B.R. 679, 680, 683 (Bankr.S.D.N.Y.1986).

Among the classifications under § 507, the Code gives priority to specific "allowed unsecured claims of governmental units." 11 U.S.C. § 507(a)(8).[4] In particular, § 507(a)(8)(E) provides in relevant part as follows:

(a) The following expenses and claims have priority in the following order:

. . .

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

. . .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(E). Under this provision, the Code provides priority status to an excise tax on a prepetition transaction for which a return, if required, was last due within the three years immediately preceding the filing of the petition. *Id.*

Taxing authorities are accorded priority treatment because they are involuntary creditors who are unable to select their debtors or take a consensual security interest before taxes become due. 4 *Collier* § 507.10[1][b], at 507–57. However, if a taxing authority is unable to obtain either payment or secured status by a certain point, "the special justification for priority is weakened and the interest of the taxing authority needs to be balanced against in-

terests of the debtor and of other creditors." *Id.* at 507–58. Specifically, the legislative history of § 507 points to a balance that must be struck among the interests of:

(1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

S.Rep. No. 95–989, at 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.

## IV. DISCUSSION

Under Texas law, a franchise tax is imposed on all domestic and foreign corporations for the privilege of doing business in the state. Tex. Tax Code Ann. § 171.001(a)(1); *see also Ford Motor Co. v. Clark,* 100 F.2d 515, 516 (5th Cir.1938); *Bullock v. Nat'l Bancshares Corp.,* 584 S.W.2d 268, 270 (Tex.1979); *Universal Frozen Foods Co. v. Rylander,* 78 S.W.3d 588, 590 (Tex.App.2002); *Rylander v. Fisher Controls Int'l, Inc.,* 45 S.W.3d 291, 293 (Tex.App.2001). The grant of this privilege confers upon corporations various economic benefits, including the opportunity to realize income and the right to invoke the protection of Texas law. *Bullock,* 584 S.W.2d at 270; *Rylander,* 45 S.W.3d at 293. It is this franchise tax that is the basis of the Texas Comptroller's Claim.

Because the priority granted by § 507(a)(8) extends not to every obligation owed to governmental entities but only to

---

**4.** When the Code was originally enacted, the priority for taxes was contained in § 507(a)(6). Lawrence P. King, 4 *Collier on Bankruptcy* § 507.10[1], at 507–56 (15th ed. rev.2004). Since that time, the tax priority has been renumbered twice and now appears in § 507(a)(8). *Id.*

taxes, *E.A. Nord Co. v. State of Wash., Dep't of Labor & Indus. (In re E.A. Nord Co.)*, 75 B.R. 634, 636 (Bankr.W.D.Wash. 1987), the Court must first determine whether the state franchise tax in the Claim asserted by the Texas Comptroller is a "tax." That determination is a federal question. *See City of N.Y. v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *Ohio Bureau of Workers' Comp. v. Yoder (In re Suburban Motor Freight, Inc.)*, 36 F.3d 484, 487 (6th Cir.1994) (*"Suburban II"*); *Yoder v. Ohio Bureau of Workers' Comp. (In re Suburban Motor Freight, Inc.)*, 998 F.2d 338, 340 (6th Cir. 1993) (*"Suburban I"*); *Groetken v. State of Ill., Dep't of Revenue (In re Groetken)*, 843 F.2d 1007, 1013 (7th Cir.1988); *In re S.N.A. Nut Co.*, 188 B.R. 392, 393 (Bankr. N.D.Ill.1995). The fact that the Texas statute labels the franchise exaction a "tax" is of no consequence. *See Indus. Comm'n of Ariz. v. Camilli (In re Camilli)*, 94 F.3d 1330, 1331 (9th Cir.1996); *New Neighborhoods*, 886 F.2d at 718; *United States v. Unsecured Creditors' Comm. of C–T of Va. (In re C–T Va., Inc.)*, 135 B.R. 501, 503 (W.D.Va.1991), *aff'd*, 977 F.2d 137 (4th Cir.1992). Courts must "look beyond the statutory label of an exaction and evaluate its 'actual effects' to determine whether it functions as a tax or . . . as some different kind of obligation." *Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy (In re Boston Reg'l Med. Ctr., Inc.)*, 365 F.3d 51, 58 (1st Cir. 2004); *see also United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 942 F.2d 1055, 1060 (6th Cir.1991) (cautioning courts to look beyond these labels to prevent "state and local governments [from] promot[ing] their own claims within the federal priority scheme merely by characterizing them as 'taxes' ").

The word "tax" is not defined in the Bankruptcy Code. *Trs. of Trism Liquidating Trust v. Internal Revenue Serv. (In re Trism, Inc.)*, 311 B.R. 509, 514 (8th Cir. BAP 2004); *Camilli*, 94 F.3d at 1331. However, the United States Supreme Court has taken a broad view of what constitutes taxes, noting that they are "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Feiring*, 313 U.S. at 285, 61 S.Ct. 1028; *see also United States v. State of N.Y.*, 315 U.S. 510, 515, 62 S.Ct. 712, 86 L.Ed. 998 (1942); *State of N.J. v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906).

■ The lower courts have struggled in applying the Supreme Court's definition to obligations in the context of bankruptcy. *See, e.g., Bell v. Brown (In re Payne)*, 27 B.R. 809, 813 (Bankr.D.Kan.1983). As a result, courts have formulated and delineated various other requirements that must be met in order for an obligation to the government to qualify for priority as a tax under federal bankruptcy law. That is, the obligation must be (1) an involuntary pecuniary burden, regardless of name, levied upon individuals or property; (2) imposed by or under the authority of the legislature; (3) for public purposes, including defraying expenses of government or of undertakings authorized by government; (4) under the police or taxing power of the state. *County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.)*, 675 F.2d 1062, 1066 (9th Cir.1982); *S.N.A. Nut Co.*, 188 B.R. at 393–94 (citing *Lorber*). The four-pronged *Lorber* test, developed under the Bankruptcy Act, has "continued vitality" under the Code. *S.N.A. Nut Co.*, 188 B.R. at 394. In addition to satisfying the *Lorber* factors, the exaction must also be universally applicable to similarly situated entities. *Suburban II*, 36 F.3d at

488; *Suburban I*, 998 F.2d at 341–42. Finally, according priority treatment to the claim must not hamper private creditors with like claims. *Id.*

■ Applying the factors to the instant matter, the Court finds that the Texas franchise exaction bears all of the characteristics of a tax obligation, and the parties do not contest that characterization. The requirement to pay corporate franchise tax is an involuntary pecuniary burden laid upon all corporations, foreign and domestic, doing business in Texas. The payment requirement is imposed by the Texas state legislature under its taxing powers in order to raise revenue and thereby pay for government expenses or undertakings authorized by the government. Although payments to priority claim holders always disadvantage holders of unsecured claims (unless all claims are paid in full), there are no private creditors with "like" claims in this matter. The only holders of comparable claims are other governmental entities, and their claims, if eligible, will also receive priority treatment under § 507(a)(8).

The Court concludes that the franchise obligation imposed under the Texas statute is a tax under federal law. The Court must now determine whether the obligation is an excise tax in order to qualify for priority treatment under § 507(a)(8)(E) of the Code.

## A. Excise Tax

■ "The task of resolving the dispute over the meaning of ['excise tax' for purposes of § 507(a)(8)(E)] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair*, the Supreme Court held that when the language of the Bankruptcy Code is clear, "the sole function of the courts is to enforce it according to its terms." *Id.* (internal quotation omitted). Here, however, the Code does not provide a definition of "excise tax," nor is the legislative history of § 507 elucidative as to the term's meaning. Courts have, therefore, turned to relevant case law in determining the appropriate interpretation of "excise tax." *See Boston Reg'l Med. Ctr.*, 365 F.3d at 57.

Numerous courts have "uniformly adopted" the definition of the term as found in *Black's Law Dictionary*. *In re Appugliese*, 210 B.R. 890, 897 (Bankr. D.Mass.1997); *see also, e.g., Trism*, 311 B.R. at 516; *New Neighborhoods*, 886 F.2d at 719; *Groetken*, 843 F.2d at 1013; *N.D. Workers' Comp. Bureau v. Voightman (In re Voightman)*, 236 B.R. 878, 881–82 (Bankr.D.N.D.1999); *Templar v. Shamokin Area Sch. Dist. (In re Templar)*, 170 B.R. 562, 563 (Bankr.M.D.Pa.1994); *In re Chateaugay Corp.*, 153 B.R. 632, 638 (Bankr.S.D.N.Y.1993); *In re Torres*, 117 B.R. 379, 386 (Bankr.N.D.Ill.1990); *State of Ohio, Bureau of Workers' Comp. v. Tri–Mfg. & Sales Co. (In re Tri–Mfg. & Sales Co.)*, 82 B.R. 58, 60 (Bankr.S.D.Ohio 1988); *Dep't of Revenue of Ill. v. Steinkopf*, 160 Ill.App.3d 1008, 112 Ill.Dec. 407, 513 N.E.2d 1016, 1021 (1987). The sixth edition of *Black's* defines "excise tax" in substantial part as follows:

> A tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer of property. In current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax ...

BLACK'S LAW DICTIONARY 563 (6th ed.1990) (citation omitted). The definition in the

seventh edition of *Black's* is comparable. BLACK'S LAW DICTIONARY 585 (7th ed.1999).

Giving the "utmost flexibility" to the definition of "excise tax," many courts have generously construed the breadth of the term. *See Green v. Beaman (In re Beaman),* 9 B.R. 539, 541 (Bankr.D.Or. 1980). The Supreme Court has "held that Congress, in imposing excise taxes, is not constitutionally limited to historical forms of such taxes and that an excise tax may be any tax that is not a direct tax." *Id.* (discussing *Chas. C. Steward Mach. Co. v. Davis,* 301 U.S. 548, 579–83, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)). Similarly, numerous lower courts have broadly defined "excise tax" as an indirect tax, one that is not directly imposed upon people or property. *See, e.g., New Neighborhoods,* 886 F.2d at 719; *Groetken,* 843 F.2d at 1013–14; *In re United Healthcare Sys. Inc.,* 282 B.R. 330, 341 (Bankr.D.N.J.2002); *In re Pa. Iron & Coal Co.,* 40 B.R. 918, 922 (Bankr.S.D.Ohio 1984) (finding that the term "excise tax" includes practically any tax that is not an *ad valorem* tax); *Payne,* 27 B.R. at 813 (same); *United States v. King (In re King),* 19 B.R. 936, 939 (Bankr.E.D.Tenn. 1982); *Beaman,* 9 B.R. at 541–42; *Waxenberg v. Comm'r of Internal Revenue,* 62 T.C. 594, 603, 1974 WL 2763 (1974). In contrasting a direct tax and an excise tax, the Supreme Court has "consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise [tax]...." *Bromley v. McCaughn,* 280 U.S. 124, 136, 50 S.Ct. 46, 74 L.Ed. 226 (1929). In the context of occupation taxes, in particular, the United States Tax Court has pronounced that "[a]n indirect tax is a tax upon some right or privilege, or *corporate franchise,* and is most often called an excise or occupational tax." *Waxenberg,* 62 T.C. at 604 (emphasis added).

The Trust contends that by so broadly defining "excise tax," courts have made the term essentially meaningless. The Court acknowledges that the definition assigned to the term is comprehensive and far-reaching. However, such a broad construction is consistent with the legislative intent in providing priorities under § 507. What is determinative is that Congress's purpose in enacting § 507(a)(8)(E) has been satisfied because the Texas statute has compelled corporations to pay franchise taxes in the public interest. While the Court acknowledges that many governmental exactions may be "excise taxes" for purposes of § 507(a)(8)(E), "that result in a case such as this accords with the purpose of Congress in providing for priorities in bankruptcy." *New Neighborhoods,* 886 F.2d at 720.

■ Moreover, even without sweepingly defining "excise tax," the term accurately describes the exact nature of the franchise tax in this matter. That is, the clear weight of authority bolsters the conclusion that an excise tax is, *inter alia,* an obligation "imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege" as noted in *Black's Law Dictionary. Trism,* 311 B.R. at 516; *New Neighborhoods,* 886 F.2d at 719; *Groetken,* 843 F.2d at 1013; *Voightman,* 236 B.R. at 881; *Templar,* 170 B.R. at 563; *Chateaugay,* 153 B.R. at 638; *Torres,* 117 B.R. at 386; *Tri–Mfg. & Sales Co.,* 82 B.R. at 60; *Steinkopf,* 112 Ill.Dec. 407, 513 N.E.2d at 1021 (noting that occupation taxes are a type of excise tax). Indeed, the Supreme Court observed nearly seventy years ago that "[a]n excise ... extends to vocations or activities pursued as of common right. What the individual does in the operation of a business is amenable to taxation just as much as [to] what he

owns[.]" *Chas. C. Steward Mach. Co.*, 301 U.S. at 580–81, 57 S.Ct. 883.

As set forth above, the Texas franchise tax is a tax on the value of the privilege to transact business in the state. *Bullock,* 584 S.W.2d at 270; *Rylander,* 45 S.W.3d at 293. Both federal and state courts in Texas have expressly concluded that the state corporate franchise tax is an excise tax. *See, e.g., Ford Motor Co.,* 100 F.2d at 517 (finding that "each [s]tate in which [a][c]ompany does business may exact an excise tax on that privilege" and that "Texas has done so"); *Conlen Grain & Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd.,* 519 S.W.2d 620, 624 (Tex.1975) (finding that an occupation tax is "a form of excise tax imposed upon a person [or entity] for the privilege of carrying on a business, trade or occupation"); *Universal Frozen Foods,* 78 S.W.3d at 590; *Am. Home Assurance v. Tex. Dep't of Ins.,* 907 S.W.2d 90, 93 (Tex.App.1995).

In states other than Texas, taxes similar in nature to the state franchise tax at issue have been held to constitute excise taxes as well. *See, e.g., Trism,* 311 B.R. at 517 (holding that tax imposed on owners of large trucks driven at least 5,000 miles annually on public highways was an excise tax); *Groetken,* 843 F.2d at 1014 (concluding that the Illinois retailers' occupation tax viewed as "a tax on the occupation of retailing" was an excise tax); *Semenek v. Dep't of Revenue of Ill.,* 166 B.R. 327, 330–31 (N.D.Ill.1994) (same); *Appugliese,* 210 B.R. at 897–98 (holding that state tax imposed by the Registry of Motor Vehicles was owed for the privilege of operating an automobile in the state and was thus an excise tax); *Templar,* 170 B.R. at 564 (concluding that a tax on one's occupation is an excise tax); *Steinkopf,* 112 Ill.Dec. 407, 513 N.E.2d at 1021 (holding that the Illinois retailers' occupation tax was an excise tax). Moreover, at least one court has specifical-

ly held that state franchise taxes are excise taxes for purposes of § 507(a)(8)(E). *In re Pemberton Pub, Inc.,* 29 B.R. 519, 520–21 (Bankr.D.Mass.1983) (finding that Massachusetts corporate franchise tax was an excise tax for purposes of the Code).

The Trust's other arguments are equally without merit. Its reliance on *In re O.P.M. Leasing Services, Inc.,* 60 B.R. 679 (Bankr.S.D.N.Y.1986), for example, is misplaced. In that case, the court, applying Texas law, found that the state franchise tax is a capital-based exaction which, while measured by capital, is apportioned by gross receipts. *Id.* at 683. Accordingly, the court held that the tax did not qualify for priority treatment. *Id.* However, the court's analysis was made within the confines of § 507(a)(7)(A) (the predecessor to § 507(a)(8)(A)), not § 507(a)(8)(E). Thus, that outcome is of no moment to the matter at bar.

Finally, the Trust asserts that for the period covered by the Claim, NSC owed franchise tax solely on its net taxable capital because NSC's net taxable earned surplus was less than zero. Reply at 5, ¶ 16. With respect to computation of the state franchise tax, § 171.002 of the Texas Tax Code provides as follows:

(a) The rates of the franchise tax are:

 (1) 0.25 percent per year of privilege period of net taxable capital; and

 (2) 4.5 percent of net taxable earned surplus.

(b) The amount of franchise tax on each corporation is computed by adding the following:

 (1) the amount calculated by applying the tax rate prescribed by Subsection (a)(1) to the corporation's net taxable capital; and

 (2) the difference between:

 (A) the amount calculated by applying the tax rate prescribed by Subsection

(a)(2) to the corporation's net taxable earned surplus; and

(B) the amount determined under Subdivision (1).

(c) In making a computation under Subsection (b), an amount computed under Subsection (b)(1) or (b)(2) that is zero or less is computed as a zero.

Tex. Tax Code Ann. § 171.002. Net taxable capital is composed of the sum of a corporation's stated capital (as defined under the Texas Business Corporation Act) and its surplus (net corporate assets minus stated capital), apportioned to Texas pursuant to § 171.106(a) of the Texas Tax Code. *Rylander*, 45 S.W.3d at 293–94. Net taxable earned surplus consists of a corporation's reportable taxable income plus and minus certain other amounts. *Id.* at 294. The net sum must be apportioned to Texas as provided in tax code § 171.106(b). *Id.*

 Even if the Trust is accurate in asserting that NSC owes franchise tax only on its net taxable capital for the period covered by the Claim, it is wholly unclear to the Court how that contention advances the Trust's argument that the unpaid franchise tax is not an excise tax for purposes of § 507(a)(8)(E). Application of the rates in § 171.002 results in franchise tax due and owing to the state, notwithstanding the fact that NSC's net taxable earned surplus may be less than zero. The franchise tax is levied on corporations for the privilege of transacting business in Texas during the year for which the tax is paid. *Universal Frozen Foods*, 78 S.W.3d at 590. As NSC conducted business in Texas during 2002, the year for which the franchise exaction was assessed, it incurred liability for corporation franchise tax under the Texas Tax Code.

In sum, the Court's conclusion that the state corporate franchise tax is an excise tax for purposes of § 507(a)(8)(E) is consistent with not only the weight of authority addressing the meaning of the term "excise tax," but also the legislative intent in providing priorities in bankruptcy. The tax imposed by the Texas statute is not a direct tax imposed upon people or property. Rather, it is a narrow, indirect tax imposed on corporations for the privilege of transacting business in Texas. As such, it is a tax imposed on "the engaging in an occupation" and "the enjoyment of a privilege" and is, therefore, properly characterized as an excise tax.

## B. On a Transaction

Finally, the Trust argues that even if the Texas franchise tax is an excise tax, it is not an excise tax "on a transaction" as required under § 507(a)(8)(E). Indeed, the statutory provision affords priority treatment to "allowed unsecured claims of governmental units" only if such claims are for an excise tax "on a transaction." 11 U.S.C. § 507(a)(8)(E).

 In the context of an excise tax, a transaction is often a discrete act, such as the sale of cigarettes. *Trism*, 311 B.R. at 517. However, transactions are not limited to separate and distinct acts or specific taxable events. *Id.* Courts have found that various activities constitute transactions in connection with excise taxes, including operating an automobile, *see, e.g., Appugliese*, 210 B.R. at 898; driving a large truck on a public highway, *see, e.g., Trism*, 311 B.R. at 517; or employing a worker, *see, e.g., Suburban I*, 998 F.2d at 340 n. 3; *New Neighborhoods*, 886 F.2d at 719; *United Healthcare Sys.*, 282 B.R. at 341; *Payne*, 27 B.R. at 814, 817.

In addition to the case law, some of which is cited above, other sources encourage the Court to broadly construe the word "transaction" in this matter. For

example, *Black's Law Dictionary* provides that a "transaction" is:

1. The act or an instance of conducting business or other dealings. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. 4. *Civil law.* An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions . . . .

BLACK'S LAW DICTIONARY 1503 (7th ed.1999) (italics in original). The legislative history of § 507 also bolsters a panoptic interpretation with respect to the meaning of the word "transaction":

Congress intended the term "transaction" to be defined broadly. The Joint Statement of the floor leaders, Senator DeConcini and Representative Edwards, stated that: *"[a]ll* Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes."

*Groetken,* 843 F.2d at 1014 (*citing* 124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6567; 124 Cong. Rec. 32,416 (House), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6498 (emphasis added)).

■ In the matter at bar, the state franchise tax is imposed upon corporations transacting business in Texas. That business necessarily encompasses and requires a variety of transactions. Whether a transaction consists of hiring a worker, executing a contract, operating a vehicle on Texas roadways, renting office space, or selling goods, any single transaction requires the corporation to pay state franchise tax for that calendar year. The Trust does not dispute that NSC conducted business in Texas during calendar year 2002, thereby exercising a privilege that confers upon corporations various economic benefits, as well as the opportunity to invoke the protection of Texas law. Therefore, NSC incurred liability for corporate franchise tax under the Texas Tax Code. That the tax is not imposed on a discrete, readily identifiable transaction is of no consequence.

■ The Trust argues that the franchise exaction is a tax based on capital—not on a transaction—because NSC owes franchise tax solely on its net taxable capital for tax year 2002. In response, the Texas Comptroller asserts that the Trust confuses the method of measuring the franchise tax with what is being taxed. The Court agrees. Pursuant to § 171.002 of the Texas Tax Code, the franchise tax is measured according to a formula that uses a corporation's net taxable capital and/or net taxable earned surplus. However, it is neither the capital nor the earned surplus that is actually being taxed. Instead, the tax is imposed on the value of doing business in the state. Accordingly, the Trust's argument fails.

Finally, the Trust cites to and relies on *In re Templar,* 170 B.R. 562 (Bankr. M.D.Pa.1994). In *Templar,* the court held that, although the occupation tax at issue was an excise tax, it was not an excise tax on a "transaction" as required by § 507(a)(7)(E).[5] *Id.* at 564. Acknowledging the legislative implication that "transaction" should be broadly construed in the context of excise taxes and quoting the definition of "transaction" from *Black's,* the court went on to enigmatically

---

**5.** *Templar* was decided before the Bankruptcy Reform Act of 1994 created a new seventh priority. Accordingly, the court cited to § 507(a)(7)(E), the forerunner to § 507(a)(8)(E).

note that it could not conclude that an occupation tax is non-dischargeable as an excise tax pursuant to 11 U.S.C. § 523(a)(1). *Id.* To do so, the court said, would require a finding that an occupation is a transaction under § 507(a)(7)(E). *Id.* "This conclusion would defy any semblance of logic." *Id.*

With all due respect to the *Templar* court, this Court is confident that it is both reasonable and correct to conclude that the Texas franchise tax is an excise tax on a transaction or a series of transactions that are necessarily required in the carrying on of business. The *Templar* court failed to note or address this actuality, and, based on the Court's research, it is alone in its holding with respect to excise taxes on transactions. Instead, the Court is persuaded by the analyses of the courts that have broadly construed the term "transaction" and therefore finds that the franchise tax in the matter at bar is an excise tax on a transaction for purposes of § 507(a)(8)(E). Accordingly, the Court holds that the Texas Comptroller's Claim is entitled to payment on a priority basis under the Bankruptcy Code.

## V. *CONCLUSION*

For the foregoing reasons, the Court overrules the objection of the NSC Creditor Trust and the NKK Litigation Trust to the classification of the Texas Comptroller's Claim for unpaid state corporate franchise tax for 2002. The Court holds that the franchise tax is an excise tax on a transaction for purposes of 11 U.S.C. § 507(a)(8)(E). Accordingly, the Texas Comptroller is allowed an unsecured priority claim in the amount of $129,084.00.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.